STEPHEN A. BOSTON *vs.* OLIVER R. FOUNTAIN.

Essex.    March 4, 1929. — May 28, 1929.

Present: RUGG, C.J., CROSBY, PIERCE, CARROLL, & FIELD, JJ.

*Negligence,* Of physician and surgeon. *Practice, Civil,* Requests, rulings and instructions, Exceptions.

At the trial of an action against a physician for personal injuries resulting from alleged negligence in care of the plaintiff following a fracture of his leg, it appeared that the defendant diagnosed the fracture as a closed fracture with no laceration in the skin or any bone protruding through the skin, and so treated it.   There was evidence, which was contradicted, that two days after the first treatment by the defendant a splinter of bone was protruding from the leg but that the defendant did not change his treatment, and that eleven days after the first treatment the defendant's attention was again called to the protruding bone and to some pus coming out; that the plaintiff then had an attack of pleurisy or pneumonia and was treated by another physician for that; that, twenty-three days after the defendant's first treatment, the plaintiff, suffering with pain in his leg, again called the defendant, who said the leg was "getting along all right," and that the presence of pus again was called to his attention; that a month and eighteen days after the first treatment the defendant again called, examined the leg and, finding it beyond repair, had the plaintiff sent to a hospital, where the leg was amputated.   *Held,* that

(1) Because, in view of the conflicting evidence, the judge was not bound to give a request which singled out but a portion of the controverted facts, there was no error in a refusal by the judge to instruct the jury, "If you find that the fracture was a closed one, without perforation of the skin, and remained so, there is no evidence of negligence on the part of . . . [the defendant] contributing to the infection, and you must find for the defendant";

(2) There was no error, after a request by the plaintiff at the close of the charge, in the judge's giving as an additional charge an instruction in substance that, if the defendant "knew that the sick man had

pneumonia or pleurisy, that would be an element that he would have to take into consideration, and you would have a right to take into consideration as to what was the measure of his care, as to what was the standard of his treatment at that time."

TORT for personal injuries and damage resulting from alleged negligence of the defendant, a physician. Writ dated May 6, 1926.

In the Superior Court, the action was tried before *Dillon,* J. Material evidence is stated in the opinion. There was a verdict for the plaintiff in the sum of $8,000. The defendant alleged exceptions.

*R. H. Wiswall,* (*Haven Parker* with him,) for the defendant.

*R. L. Sisk,* (*G. F. Hogan* with him,) for the plaintiff.

PIERCE, J. This is an action of tort to recover damages for personal injuries alleged to have been suffered by the plaintiff in consequence of alleged negligent treatment, by a physician, of a fracture of the plaintiff's left leg which resulted in amputation. The jury returned a verdict for the plaintiff, and the case is here on the defendant's exceptions to the refusal of the trial judge to give a certain ruling requested by the defendant, and to certain additional instructions given by the judge at the request of the plaintiff after the main charge.

On November 3, 1925, the plaintiff was struck by an automobile while he was stepping off the running board of his automobile truck, and sustained a fracture of his leg. The defendant responded to an emergency call, and the plaintiff was taken to the Cable Memorial Hospital in Ipswich, where the leg was set in a plaster cast by Doctor Curtis, a surgeon called in by the defendant. The defendant and the surgeon testified that the fracture was a closed fracture in the first instance as distinguished from a compound fracture, that is, there was no laceration in the skin or any bone protruding through the skin. After the plaintiff came out of ether, he complained that something was pressing on his leg, that the cast was too tight, that he could not bear it; and on November 5, 1925, the defendant cut the cast the whole length on both sides from the heel to the calf of the leg to relieve the pain. The plaintiff testified that when the cast was taken

off he saw a bone sticking out, a sliver of bone similar to a little wooden sliver "and drylike"; that the defendant pressed it back with his finger, said that it was nothing, that it would pad over, that it had slipped a little bit but there was nothing to be alarmed about, that it would be all right and that if it bothered him in a year or two they could chisel it off. The defendant denied this testimony of the plaintiff, and he and his witnesses asserted that such an occurrence was an impossibility. Thereafter the defendant treated the injury as a closed fracture. The plaintiff testified that the cast was replaced and he suffered severe pain until November 9, complaining to the nurse and to the defendant; that additional X-rays were taken on the ninth; that the cast was not removed and that he went home on November 10.

Without being called, the defendant went to see the plaintiff on November 14, took off the top of the cast and looked at the plaintiff's leg, which was wet and black and blue, swollen like a bladder and shiny. The plaintiff did not notice any pus coming from his leg. His wife testified that on November 14 the defendant came to Lynn of his own accord, took off the plaster cast, looked at the leg, and told her the leg looked good and was knitting; that she drew the defendant's notice to a bone protruding and the pus coming out a little, and the defendant said it was nothing and would flesh over, and that the fact that the leg was black and blue did not mean anything; that the blood did not circulate very well; and he further said, as the plaintiff testified, that it would heal over and form a pad.

The plaintiff and his wife testified that on November 26, he was suffering great pain in his leg; that he telephoned the defendant who came and took off the top of the cast, looked at the leg and said, "It was getting along all right, that it was fine, as well as could be expected"; that the wife brought to the defendant's notice that the bone showed a little more; that she said it looked terrible, and the defendant replied that she must expect it to look bad, that it would heal over, and if the bone bothered the plaintiff it would have to be chiseled off; that she directed the defendant's attention to pus running down the leg; that the defendant wiped it off as

well as the pus that was running into the bottom of the cast, placed a piece of cotton over the protruding bone, and replaced the cast without applying any antiseptic to the leg. The defendant denied that there was any laceration or pus at that time. On December 21, the defendant again called on the plaintiff, took off the cast, and examined the leg. It was admitted by the defendant that the leg was then almost beyond repair, and that pus was exuding from it. There was a foul odor from it, and the defendant admitted it was septic. At the defendant's suggestion a Doctor McAusland, of Lynn, was called. He looked at it after removing the top of the cast, and at once took the plaintiff to a hospital where the leg was amputated on December 24.

On November 17 or 18, the plaintiff had an attack of pleurisy or pneumonia and was treated therefor every few days until he went to the hospital. He suffered tremendous pain from the pleurisy, which is an inflammation of the covering of the lung and an "infectious disease caused by a germ causing a good deal of pain through the chest and back." The physician treating the plaintiff for pleurisy only gave him a pneumonia jacket which has a heavy lining both back and front of cotton batting to counteract sudden changes in temperature. It would not be unusual for "a man who had been through a broken leg and was somewhat run down to be in a condition which might light up a pleurisy." There was evidence that when a fracture is closed it is possible for infection to reach the seat of the fracture by travelling through the blood or lymph stream; that in a closed fracture there is danger of infection from germs getting into the system from within but not from without, and if there is such an infection it breaks out at the point where there has been a local injury; there was further evidence that if there was an open wound in the leg with the bone sticking through, infection could come from the outside, or it could have come from the plaintiff's lung.

The first exception argued on the defendant's brief is to the refusal of the judge to give his seventeenth request, which reads: "If you find that the fracture was a closed one, without perforation of the skin, and remained so, there is no

evidence of negligence on the part of Dr. Fountain contributing to the infection, and you must find for the defendant." There was no error in its refusal. The testimony warranted a finding that there was a compound fracture with a small piece of bone sticking through the skin; that it would be apparent to any physician, and had a significance which would affect the defendant's treatment of the case. There was evidence that when a fracture is closed it is possible "for infection to reach the seat of the fracture . . . through the blood or lymph stream"; and further evidence that the defendant knew that there was pus, and that an open wound ought to be watched carefully; that a window should have been cut in the cast so that the physician could take the window out and look at the wound; that its progress should be followed and the temperature of the patient taken; that the defendant did not give this treatment, and that the failure so to do was improper and negligent if the fracture was an open one. It is evident if the jury were warranted in finding that the wound was open with pus running out of it early in November, that it was then septic and that the condition was the result of negligent treatment. Of course if the jury believed the testimony of the defendant they could find that the treatment was proper. In this conflicting statement of facts the judge was not bound to give the request which singled out but a portion of the controverted facts. *Hicks* v. *New York, New Haven & Hartford Railroad,* 164 Mass. 424, 428, and cases cited.

The second exception relates to additional instructions given to the jury, upon the request of the plaintiff to instruct the jury that if the pleurisy was causing the septic condition and the defendant failed to govern himself accordingly the defendant would be responsible, even though the septic condition did in fact arise from the pleurisy. The judge stated: "In regard to the treatment of the plaintiff on the twenty-sixth day of November, now, if you find that, beginning the eighteenth of November, the plaintiff was ill with pleurisy, pneumonia, or whatever he had (you are to judge), and he was under the care of another doctor, you are to judge and measure the degree of care which the defendant should have

exercised with regard to what he knew about the condition of the patient and the fact that he was undertaking the treatment; in other words, if he knew that the sick man had pneumonia or pleurisy, that would be an element that he would have to take into consideration, and you would have a right to take into consideration as to what was the measure of his care, as to what was the standard of his treatment at that time." The exception was taken in the following colloquy at the bench: "The defendant excepts to that part of the supplementary charge just given, dealing with the situation and the defendant's duties on the occasion of his visit on November 26." The judge replied: "That is not standing alone. . . . It is understood the jury are to consider it only if the relation of physician and patient existed on the twenty-sixth." Counsel for the plaintiff asked: "Is there any doubt on that?" and the defendant's counsel said, "It was not with respect to that." In the main charge the judge had instructed the jury without exception: " . . . you are to bear in mind that there is testimony that, beginning on the eighteenth day of November, this patient had another disorder, another disease. Whether it was pneumonia or pleurisy is for you to say from the evidence before you. You have presented for your consideration the time at which this disease developed. . . . You have the testimony as to the time it takes for sepsis, or blood poisoning, to develop, and you are to say whether, upon all the facts, from all the testimony that has been offered, as to whether the septic condition that caused the loss of this man's leg was due to the fracture, or whether it came from the diseased condition, for which another doctor was treating him. . . . If you find that the defendant Fountain was acting for the plaintiff as his physician in treating him in Lynn, as such, he was bound to exercise that degree of skill and knowledge that is possessed by physicians and surgeons under similar conditions and in the manner in which the Supreme Court has described the duties of a physician. If the defendant should have discovered the septic condition of the plaintiff's leg and failed to do so, and as the result of such failure, and failure to properly treat the same, sepsis devel-

oped to the extent that amputation of the plaintiff's leg was necessary because of such failure, then the defendant is responsible for the loss of the plaintiff's leg. If the defendant was notified and discovered and recognized the existence of certain conditions which would have conveyed, or ought to have conveyed, to a physician possessing the skill possessed by physicians in his locality, that a septic condition was developing or was present, and he thereupon failed to take proper measures to counteract, prevent or safeguard the plaintiff against such septic condition, then the jury would be justified in finding that the defendant was negligent in the treatment of the plaintiff's leg. If the defendant knew, or ought to have known, by the exercise of ordinary diligence, that the plaintiff's leg had an open wound that might cause a septic condition, then the jury might find that he was negligent in the care and treatment of the same, if you find that he took no care or precaution to prevent said leg from becoming septic." *Tucker* v. *Stetson,* 233 Mass. 81, 84. *Mason* v. *Geddes,* 258 Mass. 40, 43.

The supplementary charge and the part thereof excepted to must have been understood to be taken in connection with the instructions given previously. So considered there was no error in the part to which the exception is taken. *Adams* v. *Nantucket,* 11 Allen, 203. *Parker* v. *Springfield,* 147 Mass. 391, 396. *Sayles* v. *Quinn,* 196 Mass. 492, 496. *Sullivan* v. *Northridge,* 250 Mass. 270, 275. The mere fact that infection did occur and that amputation was necessary did not warrant a jury in finding that the defendant had failed to exercise proper skill or was guilty of negligence in the treatment of the plaintiff. *Sheehan* v. *Strong,* 257 Mass. 525. *Morris* v. *Weene,* 258 Mass. 178. It was for the jury to determine on all the evidence whether the defendant, in the exercise of reasonable skill, should have discovered the condition of the plaintiff, and, if they found he knew of the condition, to decide whether under the circumstances his treatment was skilful or otherwise. *King* v. *Belmore,* 248 Mass. 108, 112, 114. The evidence was ample to warrant a finding that the defendant had knowledge of the condition of the plaintiff, that he was negligent in failing to

ascertain that there was a compound fracture, that he was negligent in treating the fracture as a simple one and, finally, that the septic condition resulted from the negligent treatment of the fracture by the defendant.

*Exceptions overruled.*