HERBERT ZIMMERMAN *vs.* MICHAEL LITVICH.

MURRAY ZIMMERMAN *vs.* SAME.

Suffolk.     January 5, 1937. — March 30, 1937.

Present: RUGG, C.J., PIERCE, DONAHUE, LUMMUS, & QUA, JJ.

*Negligence*, Physician and surgeon. *Proximate Cause. Evidence*, Admissions.

Evidence warranted a finding that a physician in treating a boy's injured hand was negligent in failing to discover or to recognize the seriousness of a septic condition of the hand as promptly as he should have done and in giving improper treatment of such condition before procuring proper treatment.

Delay by a physician in proper treatment of a patient suffering from a progressively acute infection might be found to have caused actionable injury even if it only retarded ultimate recovery.

Admissions of a physician to an injured boy's parent that "I should have operated on him. That is the chance I took," and "You needn't worry about expense, I will make good for everything," warranted a finding of acknowledgment of liability to the patient.

TWO ACTIONS OF TORT. Writs in the Superior Court dated March 14, 1934, and July 24, 1934, respectively.

The actions were tried before *Morton*, J. After verdicts for the plaintiffs in the sums, respectively, of $3,200 and $865, the judge allowed motions for new trials and reported his action for determination by this court.

*N. H. Kolodny*, for the plaintiffs.

*J. F. Dunn, Jr.*, (*Harry Leen* with him,) for the defendant.

QUA, J. The first action, by the minor plaintiff, is for alleged malpractice against a physician and surgeon who treated him after his right hand had been injured in the wringer of a washing machine. The second action is by the father of the minor for consequential damages. After verdicts for the plaintiffs the judge allowed motions for new trial in both actions on the sole ground that there was not sufficient evidence to warrant the verdicts. The correctness of this ruling is the only question reported for our determination.

There was evidence which, if accepted by the jury in its aspect most favorable to the plaintiffs, had some tendency to show the following: The injury occurred August 1, 1932, when Herbert, the minor plaintiff, was nine years of age. His hand was badly crushed, leaving a wound for the most part open. On August 8 Herbert's mother, seeing the wound unbandaged for the first time, observed that there was pus near the index finger. It was a soft mass of pus, puffy and "yellow like." She had seen pus and knew what it was. The defendant said it was not pus. He treated the wound by swabbing it with ether and by baking. Sometime after August 8 the mother informed the defendant that Herbert had a temperature of one hundred. The defendant said, "Oh, that is nothing." He continued the same treatment. On or about August 16 a hemorrhage occurred which on medical evidence the jury could find was caused by infection having destroyed a blood vessel. The defendant put on a tourniquet. After taking an x-ray photograph he said, "Good night! Sloughing there has washed the entire tendons away now, and soon we will have to operate." Upon being asked why he did not operate sooner he said, "Well, that is the chance I took." Within a few days there was a second hemorrhage, after which an operation was performed by another surgeon. At that time there were raw surfaces which were running pus and the hand was swollen and seriously infected. One of the finger arteries was found "eroded" along its entire length and tendons were found sloughed and destroyed from sepsis. One joint was infected. The operation consisted in the removal of the sloughing tissue as a preliminary to further curative treatment. Later, other operations were necessary for skin and tendon grafting. The boy has never recovered full motion of the index finger. There was medical evidence that there are local signs of infection but that infection is judged mostly by temperature; that in this case temperature "would make you suspect there might be infection certainly"; and that going over the hand with ether and baking was not proper treatment after active sepsis began.

There was much evidence tending to contradict or to qualify that which has just been stated. But there was also evidence that during the course of the treatment the defendant, in talking to the boy's mother, spoke of the boy's condition as not being serious; that up to and after the first hemorrhage he tried to dissuade her from calling in another doctor whom she preferred; that when the mother pressed the defendant for the truth about the infection having destroyed the tendons, he replied, "Well, I will take care of it," "Well, that is true. I should have operated on him. That is the chance I took," "It is done now, and that is all there is to it. I will take care of it and you needn't worry about him. You needn't worry about expense, I will make good for everything."

We are of the opinion that from all this evidence, including the admissions, the jury could find that the defendant failed to exercise the skill and care which it was his duty as a physician and surgeon to exercise toward his patient, in that he failed to discover the septic condition of the boy's hand or failed to recognize its seriousness and failed to give or to procure proper treatment as promptly as he should have done. *King* v. *Belmore*, 248 Mass. 108. *Boston* v. *Fountain*, 267 Mass. 196. Compare *Bouffard* v. *Canby*, 292 Mass. 305.

The defendant contends that the evidence discloses no ascertainable consequences resulting from any failure on the part of the defendant which might not have followed from so severe an injury even if he had been in no way remiss, citing *Wright* v. *Clement*, 287 Mass. 175, *Semerjian* v. *Stetson*, 284 Mass. 510, and similar cases. But we think that from the progressive nature of the infective process, as shown by the evidence, in which time may well be an important element, and from the evidence that the defendant's treatment after active infection set in was not proper and that infection was arrested when the treatment was changed, it cannot quite be said as matter of law that there was no proof that delay in proper treatment was injurious in some degree, even if it only retarded ultimate recovery. In *King* v. *Belmore*, 248 Mass. 108, 112–113,

negligent failure to discover and to treat a septic condition in a wound was held to raise a jury question. *Marangian* v. *Apelian*, 286 Mass. 429, 437. Besides, if the jury believed the defendant made all of the admissions as stated, they could infer therefrom more than a recognition of harmless mistake on his part. They could infer an acknowledgment of all the necessary elements of legal liability for damages in some amount. *Tully* v. *Mandell*, 269 Mass. 307. *Ellis* v. *Pierce*, 172 Mass. 220. *Wiseman* v. *Rome*, 250 Mass. 505. *Jasman* v. *Meaney*, 250 Mass. 576. *Bernasconi* v. *Bassi*, 261 Mass. 26. *Rosen* v. *Burnham*, 272 Mass. 583. Compare *Semerjian* v. *Stetson*, 284 Mass. 510, 513. Under the terms of the report we are not concerned as to the measure of damages. The only question before us is whether there was anything at all for the jury. *Smith* v. *Lincoln*, 198 Mass. 388, 392.

In each case the order allowing the motion for new trial is reversed and the verdict is to stand.

*So ordered.*