CONRAD TALLON vs. MARTIN H. SPELLMAN.

Bristol.    October 25, 1937. — January 31, 1939.

Present: FIELD, C.J., DONAHUE, LUMMUS, QUA, & DOLAN, JJ.

*Negligence*, Physician and surgeon. *Evidence*, Presumptions and burden of proof.

In the absence of expert medical testimony to that effect, a finding of negligence of the "visiting surgeon" at a hospital was not warranted by evidence that, no foreign substance being disclosed by x-rays of a chest wound near the pleura, he treated it by causing it to be washed and closed without probing and supervised further treatment for eleven days, though later pus appeared and the wound did not heal during a period of treatment with which he had nothing to do and at the end of several months a small piece of wool fabric was removed from the wound, which then healed rapidly.

TORT.    Writ in the Superior Court dated September 18, 1935.

After a trial before *Walsh*, J., he ordered a verdict for the defendant and reported the case to this court with the stipulation described in the opinion.

*A. Auger*, for the plaintiff.

*H. F. Hathaway*, for the defendant.

DONAHUE, J.    This is an action of tort brought on behalf of the plaintiff to recover damages for alleged malpractice of the defendant, who is a surgeon.    At the close of the evidence a judge of the Superior Court directed a verdict for the defendant and reported the case to this court on a stipulation of the parties that, if the case should have been submitted to the jury, judgment is to be entered for the plaintiff in the sum of $500; otherwise, judgment is to be entered for the defendant.

Evidence introduced by the plaintiff tended to show the following facts: When about eleven years old the plaintiff, in the early part of January, 1935, was injured while coasting.    A runner of the sled of another boy struck the plaintiff, went through his clothing, and made a wound in his

chest. He was brought to a hospital, where he was examined by the defendant, who was "visiting surgeon," and another doctor, who was "house officer." The defendant directed the taking of x-rays, the result of which was negative. Under his direction the wound was washed with "green soap" — one-half strength alcohol and iodine was used — the wound was closed by two interrupted horsehair sutures, and antitoxin was injected in the plaintiff's arm. He remained in bed at the hospital for nine days, in which period he was treated daily by the "house officer" and seen by the defendant on his daily rounds of the hospital. After an eleven-day stay, he went home on January 14, and thereafter for a period of about two months visited the out-patient department of the hospital weekly and was treated by the "house officer." During this period pus appeared in the wound and on two occasions the "house officer" picked from it some threads. At the end of three months the wound was only partially healed and he was taken to another hospital, where he remained two days. There was at that time a "pussy" discharge from the wound. The records at that hospital showed: "Diagnosis: Chronic sinus of the chest wall; Foreign body (wool fabric) chest wall. . . . Chest plates x-ray taken . . . for ? foreign body. Report: "No foreign body opaque to x-rays seen.' . . . Patient was taken to operating room . . . and sinus excised. In sinus was found small piece of wool fabric. Postoperative condition good. . . . wound is clean, healing rapidly. Discharged home, relieved, in care" of a doctor. Two weeks afterwards the wound had healed.

The defendant's testimony is here summarized. The word "sinus," appearing in the records of the second hospital to which the plaintiff went; means a tract leading from the outside into a portion of the wound. This leaves a little opening for a discharge. It usually takes several months for the formation of a sinus of this type; it would not form within eleven days from the time of the accident. After a sinus does form, it is easier to find a foreign substance, usually at the bottom of the sinus. It assists a surgeon in finding such a substance.

The defendant's term of service as "visiting surgeon" was the month of January and he did not serve in that capacity again until the month of July. Upon examination of the plaintiff at the time he entered the hospital the defendant found a lacerated wound over the left breast. The chest wall was exposed and bleeding some. Directly under the wound was the pleura, which was only one quarter inch thick between the ribs. If the pleura became injured during the treating of the wound, the lung would collapse. The defendant directed the "house officer" to give the treatment earlier described. He told the "house officer" what to do "all at one time on the first day." He also told him to be careful in any scraping of the wound because the chest wall was so thin. The purpose of the treatment directed and given was to get out all the foreign material possible, to give anything left in the wound room to get out, and to drain and help evacuate the wound of pus or foreign material. In his daily rounds of the hospital the defendant saw the plaintiff up to January 14. His temperature began to subside on the fifth day after entering the hospital, and on the seventh day it was normal. The defendant never saw the plaintiff after January 14, when the plaintiff left the hospital with instructions to return to the out-patient department for further treatment.

The defendant also testified that when the plaintiff left the hospital his wound was discharging serum, which is not pus; that such a wound as the plaintiff received would take three or four months to heal; that if foreign matter was in the wound it would not cause more trouble; that the wound would heal up to the place where there was foreign material and leave a sinus; that the condition of the wound at the time the plaintiff left the hospital was such that he could go about his daily pursuits during the process of healing. He testified that the treatment given to the plaintiff was good surgical treatment and that no more could be done for the plaintiff at the hospital than was in fact done.

Viewing all the evidence in the case in the light most favorable to the plaintiff, we are of the opinion that a basis

was not afforded for finding the defendant negligent in not having, or in not using, in the examination of the plaintiff or in the direction of his treatment, the skill and care which surgeons commonly have and use in similar circumstances. *Semerjian* v. *Stetson*, 284 Mass. 510, 512, 513, and cases cited.

The precise relationship between the defendant and the "house officer" does not appear. Compare *Withington* v. *Jennings*, 253 Mass. 484; *Guell* v. *Tenney*, 262 Mass. 54. An inference, however, is warranted that included in the duties of the "house officer" was the administering by him to patients of such treatment as the defendant should direct. The extent of the liability of the defendant would be for negligence in his acts or omissions in the examination of the plaintiff, in the diagnosis of his injury, in the directions for treatment which he gave the "house officer," and in the supervision of the treatment given by the "house officer" up to January 14 when the plaintiff left the hospital. There is nothing in the record to indicate that the defendant had anything to do with the out-patient department or had any supervision over treatment there given to patients.

One contention made by the plaintiff is that the defendant was negligent in not discovering and removing from the wound, at the time of the examination of the plaintiff, the bit of wool fabric which, several months later, was removed at the second hospital to which the plaintiff went. If the testimony of the defendant were accepted, there was adequate reason for not determining at that time whether any foreign matter was in the wound, the course followed by the defendant of awaiting the partial healing of the wound and the formation of a sinus was prudent and proper, and the defendant in all that he did or did not do followed good surgical practice and was not negligent. If his testimony were rejected, as it might be, there was no expert testimony on which to base a finding that the conduct of the defendant was improper or in violation of the obligation as to using care which he owed to the plaintiff. The standard of care set by the law in the ordinary negligence case is the care which would be

used by an ordinarily prudent person in similar circumstances. The standard of care by which the negligence of the defendant in an action for malpractice is determined, is somewhat differently expressed. In such cases the measure is the skill and care which persons in the same profession as the defendant ordinarily have and use in similar circumstances. The facts in a case of alleged malpractice may be such that jurymen out of their common knowledge and experience are able, without the aid of expert medical testimony, to say what skill and care members of the same profession as the defendant ordinarily have and use in like circumstances, and to apply that standard to the skill and care found to have been possessed and used by the defendant. *Gabrunas* v. *Miniter*, 289 Mass. 20, 22. In many cases, in the absence of medical testimony, the jury unaided by medical testimony are unable to do this. *Bouffard* v. *Canby*, 292 Mass. 305, 309–310. *Marangian* v. *Apelian*, 286 Mass. 429, 436. *Semerjian* v. *Stetson*, 284 Mass. 510, 514. *Goode* v. *Lothrop*, 266 Mass. 518, 520. *Toy* v. *Mackintosh*, 222 Mass. 430, 432. See *Vigneault* v. *Dr. Hewson Dental Co.* 300 Mass. 223, 225; *Gabrunas* v. *Miniter*, 289 Mass. 20, 22. We do not think that the common knowledge and experience of men are such that a jury in this case could, unassisted by expert testimony, say that proper medical practice required going into the wound at the time of the defendant's examination or while the plaintiff was under the defendant's supervision, to probe for any foreign material that might be there, *Bouffard* v. *Canby*, 292 Mass. 305, 309–310, or could say that the defendant was negligent in following the course he did rather than the course now suggested by the plaintiff's counsel.

The facts in the present case distinguish it from the case of *Zimmerman* v. *Litvich*, 297 Mass. 91, on which the plaintiff relies. The mere fact that pus appears in a wound which is being treated by a physician does not warrant the finding that he was negligent. *Boston* v. *Fountain*, 267 Mass. 196, 202. *King* v. *Belmore*, 248 Mass. 108, 114. Infection may arise in a wound such as the plain-

tiff received regardless of the care used by the attending physician. There was here no evidence that pus was seen before the plaintiff left the hospital on January 14. The testimony of the defendant that the purpose of keeping the wound open was to permit foreign matter or pus to come out did not warrant a finding that pus was present when the plaintiff was examined on the day of the accident. There was no evidence of any specific act of the defendant or of the "house officer" that introduced any septic matter into the wound. *Goode* v. *Lothrop,* 266 Mass. 518. The inference was warranted that foreign matter caused the appearance of pus but not at a time when the defendant was treating the plaintiff or was supervising his treatment. Pus appeared while the plaintiff was being treated in the out-patient department. The defendant had nothing to do with that department and his term of service at the hospital ended January 31.

Since the evidence did not warrant the submission of the case to the jury, in accordance with the stipulation of the parties, judgment must be entered for the defendant.

*So ordered.*