HARRIET M. COBURN, administratrix, *vs.* GEORGE A. MOORE.

Plymouth. May 8, 1946. — July 8, 1946.

Present: FIELD, C.J., LUMMUS, DOLAN, RONAN, & WILKINS, JJ.

*Negligence*, Physician and surgeon, Causing death. *Witness*, Expert witness. *Evidence*, Opinion: expert. *Conscious Suffering. Death. Proximate Cause. Error*, Whether error harmful. *Practice, Civil*, Exceptions: whether error harmful; Ordering verdict; Variance.

Evidence at the trial of an action by an administrator against a physician who conducted a hospital warranted a finding of negligence on the part of the defendant in causing the removal of the plaintiff's intestate from the hospital to an institution at a distance when he knew or should have known that the intestate was suffering from pneumonia.

An exception was overruled to an expert witness's being asked a hypothetical question after there had been a colloquy of the court and counsel and there had been properly added to the question a further hypothesis based on the evidence and the judge reasonably understood that the excepting party's only objection was to such addition.

Opinion testimony of a witness offered as an expert, admitted subject to objection and exception but without objection on the ground of lack of qualification of the witness and otherwise competent, remained in the case although the presiding judge, on objection later made during the examination of the witness, ruled that he was not qualified, where

---

[1] See St. 1945, c. 469, § 1; St. 1946, c. 88; St. 1946, c. 610.

the objecting party did not move to strike out the testimony and the judge did not do so of his own motion.

Error in the admission, at the trial of an action for conscious suffering and death alleged to be due to negligence of the defendant, a physician, of an opinion that certain conduct in moving a patient was not good medical practice, given by a medical witness who the presiding judge previously had ruled was not qualified, was harmless where it appeared that the defendant already had testified substantially to the same effect when called by the plaintiff.

Evidence warranted a finding that a patient, suffering from pneumonia, a mouth infection and a skin disease at a hospital, when negligently caused to be moved to a distant institution where he died the day after his arrival, suffered more during the journey than he would have suffered had he not been moved, and also warranted a finding of conscious suffering preceding his death and caused by such negligence.

Evidence warranted a finding that the negligent removal of a patient suffering from pneumonia from a hospital to an institution at a distance was a proximate cause of his death on the day following his arrival at the institution.

In an action of tort by an administrator against a physician for causing conscious suffering and death, where the case was fully tried and the evidence warranted findings that the conscious suffering and death were caused by negligence of the defendant but in particulars varying from those stated in the declaration, it was ordered that exceptions to the denial of motions by the defendant for directed verdicts in his favor be sustained and judgment entered for the defendant unless the Superior Court within thirty days of the date of the rescript allowed an amendment of each count making it conform to the proof, and that in that event the exceptions be overruled.

TORT. Writ in the Superior Court dated May 17, 1943.

The case was tried before *Sullivan*, J. The defendant was called as a witness by the plaintiff. Following his testimony, Dr. Gyrdie W. Dickinson was called by the plaintiff. The exceptions respecting evidence described in the opinion were saved during the course of his testimony.

*J. N. Clark*, for the defendant, submitted a brief.

*J. N. Esdaile*, for the plaintiff.

RONAN, J. This is an action of tort against a physician. It is alleged in the first count that the defendant negligently treated the plaintiff's intestate for a throat ailment and that because of such negligence the intestate died of pneumonia; and in the second count that the negligent treatment for a throat ailment caused conscious suffering by the intestate. The jury returned a verdict for the plaintiff on each count. The defendant excepted to the denial of motions for directed

verdicts, to the refusal of two requests for instructions, and to the admission of evidence.

The following facts could be found by the jury. The intestate, who was the husband of the plaintiff, was suffering from a severe cold on November 24, 1941, and complained of a sore throat on November 26, 1941. He had been using medicine and tablets for a gargle which his wife had procured from a physician, but he had not responded to this treatment and another physician was called on November 27, 1941, who sent him to a hospital conducted by the defendant in Brockton. The plaintiff saw him at the hospital on November 28, 1941. He was very ill and cold, had chills, complained of pain in his sides, and was coughing. When his wife visited him the next day, she noticed that his face was flushed and that he was coughing up a brownish colored sputum. He said that he had pain and was very sick. The plaintiff, who had worked as a practical nurse for ten years, told the floor nurse that her husband had pneumonia. The defendant was familiar with the symptoms of pneumonia, which is rather an easy disease to diagnose. If a person has a cough, a previous history of a cold and a pain in his sides, and complains of being cold, the defendant would be suspicious that pneumonia had started; and if on the next day he discovered a definite dullness on percussion of the chest, an increase in the voice sounds, bronchial or harsh breathing sounds, a flushing of the face, a high temperature and the common symptom of a rusty colored sputum containing dark brown blood, a definite diagnosis of pneumonia could then be made. A hospital record, in the handwriting of the defendant, stated that the lungs of the intestate were clear on November 27, 1941, and on November 30, 1941. According to this record, the intestate on November 30, 1941, was objecting rather violently to treatment and to taking nourishment. The defendant called upon the welfare authorities of Bridgewater to remove the intestate from the hospital. On the afternoon of November 30, 1941, he was driven in an automobile by a police officer sixty to seventy miles to the Tewksbury State Hospital. An examination at this hospital on the morning of December 1, 1941, disclosed that there was

"bronchovesicular breathing at the left base with coarse rales throughout." The examining physician suspected that the intestate had pneumonia. The intestate died on the evening of December 1, 1941.

It was undisputed that the intestate was suffering from Vincent's angina when he was admitted to the defendant's hospital. This disease starts with a laceration of the pharynx in the region of the tonsils, and as it progresses involves the entire mucous coating of the mouth. The temperature and pulse are increased and the patient becomes very ill. There may be chills and the sputum becomes rusty colored. There was expert evidence that the intestate was suffering from pneumonia while at the defendant's hospital, notwithstanding the testimony of the defendant to the contrary. The evidence was sufficient to support findings that the defendant should have known that the intestate was suffering from pneumonia even if Vincent's angina, a disease from which he was suffering, displayed some symptoms that were also characteristic of pneumonia, and that it was improper medical treatment to order the removal of the intestate from his hospital. The negligence of the defendant was an issue of fact. *Chesley* v. *Durant*, 243 Mass. 180. *King* v. *Belmore*, 248 Mass. 108. *Butler* v. *Layton*, 266 Mass. 117. *Boston* v. *Fountain*, 267 Mass. 196. *Zimmerman* v. *Litvich*, 297 Mass. 91.

A hypothetical question was put to an expert witness, called by the plaintiff, seeking his opinion as to whether it was good medical practice for the defendant to order the removal of the intestate, who had certain described symptoms, from Brockton to Tewksbury, a distance of sixty to seventy miles. The defendant objected, and the question was amended by adding that it could also be assumed that he was suffering from Vincent's angina and a skin condition. The defendant again objected and, in answer to an inquiry by the judge, counsel stated that his objection was that the question was based on the assumption that the intestate had pneumonia and that the witness was "going to be asked to testify it was bad practice to send the man out when . . . [the defendant] testifies that he didn't know

that he had pneumonia and had no evidence of it." The judge stated that it was for the jury to say whether the intestate had pneumonia. Counsel replied that he then had no objection. Counsel for the plaintiff added to the facts assumed in the previous question the further assumption that the defendant knew or ought to have known that the intestate had pneumonia. The defendant objected and saved an exception. The witness answered that it was very bad practice, and in answer to further interrogation stated that his reason was that such a trip would "greatly weaken the patient and hasten the end death." The judge, we think, reasonably understood that the objection was based solely on the alteration of the hypothetical question by stating an hypothesis that the defendant knew or ought to have known that the intestate had pneumonia. *Rothwell v. First National Bank*, 286 Mass. 417, 422. *Alfred J. Silberstein Inc. v. Nash*, 298 Mass. 170, 174. *Perry v. Manufacturers National Bank*, 315 Mass. 653, 660. There was evidence, if believed, that would support these additional assumed facts, and this addition did not make the question an improper one. If the defendant intended to base his objection on grounds other than this addition to the question, he should have then brought them to the attention of the judge. *Howard v. Hayward*, 10 Met. 408, 420. *Holbrook v. Jackson*, 7 Cush. 136, 154. *Brown v. Leach*, 107 Mass. 364, 368. *Morrison v. Holder*, 214 Mass. 366, 369. *Shumaker v. Lucerne-in-Maine Community Association*, 275 Mass. 201, 206. Counsel did not make any contention at that time that the witness was not qualified to testify as to the proper medical practice in Brockton. *Knight v. Overman Wheel Co.* 174 Mass. 455, 465. Later, in the direct examination of this witness, the defendant for the first time raised the question that the witness was not familiar with the medical practice in Brockton, and the judge after hearing evidence ruled that the witness was not qualified to express an opinion upon this subject. After that ruling was made it was the duty of the defendant, if he still contended that the admission of the evidence we have discussed was erroneous, to move to strike it out.

This he did not do. *Morrison* v. *Holder*, 214 Mass. 366, 369. *Nugent* v. *Boston Consolidated Gas Co.* 238 Mass. 221, 235. *Commonwealth* v. *Patalano*, 254 Mass. 69, 75.

There was error, however, when the judge, after ruling that the witness was not competent to express an opinion on the prevailing medical practice in Brockton, allowed him to testify that it was not good medical practice in a city of the size of Brockton for a physician to permit a man to be moved sixty to seventy miles if his temperature was one hundred degrees, it being understood that the question referred to a hypothetical case and not to the instant case. The question was too broad. It was inconsistent with the previous ruling of the judge on the qualifications of the witness. That ruling was in accordance with our decisions. *Ernen* v. *Crofwell*, 272 Mass. 172. *Semerjian* v. *Stetson*, 284 Mass. 510. *Gabrunas* v. *Miniter*, 289 Mass. 20. *Bouffard* v. *Canby*, 292 Mass. 305. *Vigneault* v. *Dr. Hewson Dental Co.* 300 Mass. 223. But in view of the whole evidence, including the testimony of the defendant that it was bad practice for a Brockton doctor to move a patient who he knew had pneumonia out of one hospital to another and to transport him to Tewksbury, that such removal might contribute to his death, and that it is the using up of a man's strength that causes a man's death when he has a condition like pneumonia, we are of opinion that the admission of the evidence did not constitute reversible error. *Watson* v. *Forbes*, 307 Mass. 383. *Omansky* v. *Shain*, 313 Mass. 129. *Bendett* v. *Bendett*, 315 Mass. 59. *Runels* v. *Lowell Sun Co.* 318 Mass. 466.

The defendant contends that the evidence does not support the count for conscious suffering and the count for death.

We first deal with the claim for conscious suffering. The burden was upon the plaintiff to prove that the trip to Tewksbury caused the intestate to suffer more than he would have suffered if he had remained in the defendant's hospital. *Fuller* v. *Andrew*, 230 Mass. 139, 147, 148. *Choicener* v. *Walters Amusement Agency, Inc.* 269 Mass. 341, 343. *Allicia* v. *Boston, Revere Beach & Lynn Railroad*, 294 Mass. 488, 490. *Melnik* v. *Perwak*, 295 Mass. 512, 513.

Sometimes the circumstances are such as to warrant an inference that conscious suffering preceded the death. *Nourse* v. *Packard,* 138 Mass. 307. *Pierce* v. *Cunard Steamship Co.* 153 Mass. 87. *Martin* v. *Boston & Maine Railroad,* 175 Mass. 502. *Brosnan* v. *Gage,* 240 Mass. 113. *Nadeau* v. *Taunton,* 247 Mass. 104. *Isaacson* v. *Boston, Worcester & New York Street Railway,* 278 Mass. 378. The defendant testified that the intestate was a very sick man when he started on the trip to Tewksbury. There was evidence that the defendant told the chauffeur that it would be all right for the intestate to sit upright in the back seat, although the automobile could be converted into an ambulance so that a person could be in a prone position. A patient with pneumonia puts a strain upon his heart by getting out of bed and walking "as would a ride with the jounces over a distance of sixty to seventy miles." The trip consumed two hours. The next morning an examination showed that the intestate was suffering from an extensive case of Vincent's angina which prevented him from talking coherently on account of mouth and throat lesions; that there were denuded areas of skin in the axillary folds which were very tender and red; that there was a denuded area on the left lateral abdomen region; that there were denuded areas in both inguinal regions; and that besides there was an irregular lesion on the right chest suggesting a ringworm. The jury could reasonably infer that the automobile trip to Tewksbury caused pain and suffering to one in such a physical condition as that of the intestate on the day before his death. In passing upon a motion for a directed verdict in a case like the present, we are called upon to determine whether there was any evidence of damages and not whether the damages were correctly assessed. An exception to the denial of such a motion cannot ordinarily be sustained on the ground that the jury ought to have found a lesser amount of damages. *Patton* v. *DeViney,* 259 Mass. 100, 102. *Beit Bros. Inc.* v. *Irving Tanning Co.* 315 Mass. 561, 563. *Lane* v. *Epinard,* 318 Mass. 664, 667. See *Zimmerman* v. *Litvich,* 297 Mass. 91, 94; *Allison* v. *Sessa,* 302 Mass. 302, 305.

There was evidence to support the count for death. The death certificate gave the cause of death as Vincent's angina, complicated by tinea corpiris and terminal bronchopneumonia. This was prima facie evidence of the cause. G. L. (Ter. Ed.) c. 46, § 19. See now St. 1945, c. 570, § 1. *Walcott* v. *Sumner,* 308 Mass. 413. *Lydon* v. *Boston Elevated Railway,* 309 Mass. 205. This certificate may properly be interpreted to mean that the last two named diseases combined and contributed with the first named disease to cause death. Furthermore, the evidence was ample to warrant a finding that the removal of the intestate from the defendant's hospital weakened his strength and accelerated his death. This was enough to show a causal relation between the negligence of the defendant and the death of the intestate. *Butler* v. *Layton,* 266 Mass. 117. *Marangian* v. *Apelian,* 286 Mass. 429. *Dellapenna* v. *Irwin,* 291 Mass. 221. *Wallace* v. *Ludwig,* 292 Mass. 251. *Deward* v. *Whitney,* 298 Mass. 41. *Vigneault* v. *Dr. Hewson Dental Co.* 300 Mass. 223. If, as could be found, such negligence caused the death of the intestate to occur before it otherwise would, then liability for the death may be fastened upon the one producing this result. *Charles* v. *Boston Elevated Railway,* 230 Mass. 536. *DeMarco* v. *Pease,* 253 Mass. 499. *Colantueno's Case,* 275 Mass. 1. *Edwards* v. *Warwick,* 317 Mass. 573.

It also follows from what has just been said that there was no error in refusing to grant two requests for instructions to the effect that there was no evidence that any negligence of the defendant was a proximate cause of the death of the intestate or that if he had remained at the defendant's hospital his death would have occurred at any later time than it did.

The evidence was sufficient to support causes of action for conscious suffering and death on the ground that it was negligent for the defendant to order the removal of the intestate to Tewksbury when he knew or ought to have known that the intestate was suffering from pneumonia. But the case proved was not the case alleged. There was no negligence in treating a throat ailment, which was the

only negligence alleged. There was a substantial variance requiring the allowance of the motions for directed verdicts which were grounded not only on the evidence but also on the pleadings. *Tinkham* v. *Wind*, 319 Mass. 158. *Pochi* v. *Brett*, 319 Mass. 197. The result is that the exceptions must be sustained and judgment entered for the defendant unless the Superior Court within thirty days of the date of the rescript allows an amendment of each count making the pleadings conform to the proof, and in that event the exceptions are to be overruled. *Payne* v. *R. H. White Co.* 314 Mass. 63, 67. See *Pilos* v. *First National Stores Inc.* 319 Mass. 475, 479.

*So ordered.*