Gadsby, P. J.
This is an action of contract or tort in which the plaintiff seeks to recover for alleged injury to her person, alleged to have resulted from the negligence on the part of the defendant in his professional treatment of the plaintiff in the course of his practice as a physician.
*187 The report in this case is rather voluminous as to the evidence. It is not necessary for the purpose of this decision to report it in detail. Suffice to state that the plaintiff consulted the defendant in his professional capacity as a physician in order to have her ears perforated so that she might wear earrings. The ears became infected and the Court found that the defendant was negligent in the use of the electric needle. The trial judge made, in part, the following specific findings of fact. ‘ The defendant undertook to pierce the lobes of both ears. He used an electric needle. He was negligent in the use of the needle and as a result of his negligence the lobes of the plaintiff’s ears were damaged.”
While in the usual case, questions of negligence and contributory negligence are primarily questions of fact over which this Division has no right of review, Ashapa v. Reed, 280 Mass. 514, yet this case presents features outside the scope of the usual case.
The defendant has presented certain requests for rulings of law which were denied by the Court, namely, requests Nos. 2 and 3. Request ,#2 is as follows: “ (2) In the case at bar the doctrine of res ipso loquitur has np application.”
By the denial of this request the Court in effect has ruled that the doctrine of res ipso loquitur applies in this case, with the result that the burden has been thrown on the defendant to rebut this prima facie case made out by the plaintiff in accordance with this legal principle. The Court has in substance ruled that the mere fact of injury has made out a case of negligence.
In the case of Semerjian v. Stetson, 284 Mass. 510, an action was brought against a physician for alleged negligence in treating the plaintiff’s eye, the plaintiff subsequently having lost the sight of the eye. The Court at page 514 said, “The mere fact that pain, inflammation and an ulcer in the plaintiff’s eye followed the operation *188 did not justify the inference of want of proper care and skill on the part of the doctor or warrant the conclusion that the conditions were the result of the doctor’s negligence.” As the.Court said at page 515, “The doctrine of res ipso loquitur is not applicable where as here the common knowledge or experience of men is not extensive enough to permit it to be said that the plaintiff’s condition would not have existed except for negligence of the persons charged.” See King v. Belmore, 248 Mass. 108 at 114; Boston v. Fountain, 267 Mass. 196 at 202.
In Ernen v. Crofwell, 272 Mass. 172, which was a case involving a certain hypodermic needle inserted in the plaintiff’s mouth by the defendant, the Court said at page 175, “It is plain that the mere breaking of the needle inserted in the plaintiff’s jaw was not evidence of neglig-ence.’’
The trial judge also denied request No. 3, which was as follows: “ (3) The mere fact that the plaintiff sustained a bad result as a result of the perforation of her ears is no evidence of negligence on the part of the defendant. Semerjian v. Stetson, 284 Mass. 510.” The Court by denying such request has gone so far as to rule that the mere fact that the plaintiff suffered an unsatisfactory result from the operation was evidence of negligence on the part of the defendant. Such a ruling would place an intolerable burden upon the medical profession in the treatment of cases. It would in effect, hold that the doctor operated at his peril. If the result were unsatisfactory then he would be to blame. It would not be difficult to imagine the reluctance with which any surgeon would perform an operation if such a rule were followed. The doctrine of res ipso loquitur could not be extended so far as a matter of public policy. It would make the physician an insurer of the result.
In Zarrillo v. Stone, 317 Mass. 510 at 511, the Court said, “And the mere happening of the accident would not warrant a finding of negligence on the part of the defendant. ’ ’
Even if we are to assume that there are facts which *189 would justify a finding of negligence by the Court, the defendant is entitled as of right to know the rules of law which the judge employed in arriving at his conclusion in instructing himself as jury. In a jury case his instructions are a matter of open record for all to examine. However, in a jury-waived case, the only method by which we can determine the principles of law which the judge applied is by his action of requests for rulings of law. See Bangs v. Fair, 209 Mass. 339.
It is clear that the judge erred in the denial of the defendant’s requests for rulings of law Nos. 2 and 3. It must be presumed that his action of these requests became the law which he adopted on arriving at his conclusion. Even if the trial judge disbelieved the testimony of the defendant, such disbelief does not furnish affirmative evidence to the contrary. Good v. Lothrop, 266 Mass. 518.
We are therefore of opinion that the Court erred in its disposition of requests Nos. 2 and 3 of the defendant and it is ordered that the finding for $4000. in favor of the plaintiff be vacated and the case remanded for a new trial.
*190 STATEMENT
Statement of the ownership, management, circulation, etc., required by the Act of Congress, of August 24, 1912 as amended by the Acts of March 3, 1933 and July 2, 1946, of Massachusetts Appellate Division Reports published bimonthly at Boston, Mass., for October 1, 1950.
State of Massachusetts, County of Suffolk — ss.
Before me, a Notary Public in and for the State and county aforesaid, personally appeared A. Moskow, who, having been duly sworn according to law, deposes and soya that he is the editor of the Massachusetts Appellate Division Reports and that the following is, to the best of his knowledge and .belief, a true statement of the ownership, management, etc., of the aforesaid ■publication for the date shown in the above caption, required by the Act of Augusit 24, 1912, as amended by the Acts of March 3, 1933, and July 2, 1946 (section 537 Postal Laws and Regulations), printed on the reverse of this form, to wit:
1. That the names and addresses of the publisher," editor, managing editor, .and business' manager are: Publisher, Lawyers’ Brief & Publishing Co.; Editors — A. Moskow- — H. G. Slater; Managing Editor, A. Moskow; Business Manager, D. Kerr, all of Boston, Mass.
2. That the owner is: (If owned by a corporation, its name and address must be stated and also- immediately thereunder the names and addresses of stockholders owning or holding one percent or more of total amount of stock.
. If not owned by a corporation, the names and addresses of the individual owners must be given. If owned by a firm, company, or other unincorporated cómcern, its name and address, as well as those of each individual member, must "be given.) Lawyers’ Brief & Publishing Co.; W. Kerkin, T. Lyons, A. •Moskow and W. G. Embree, all of Boston, Mass.
3. That the known bondholders, mortgagees, and other security holders owning or holding 1 percent - or more of -total amount of bonds, mortgages, out other securities are: (If there are non-e, so state.) None.
4. That the two paragraphs next above, giving the names of the owners, ■stockholders and security holders, if any, contain not only the list of stockholders and security holders as they appear upon the books of the company but also, in cases where the stockholder or security holder appears upon the books of the company as trustee or in any other fiduciary relation, the name of the .person or corporation for whom such trustee is acting, is given; also-that the said two paragraphs contain statements embracing affiant’s full knowledge and belief, as to the circumstances and conditions under which stockholders and security holders who do not appear upon the books of .the company as trustees, hold stock and securities in a capacity other than that of a bona fide owner; and this affiant has no reason to believe that any other person, association, or corporations has any interest direct or indirect in the said stocks, bonds, or other securities than as so stated by him.
A. MOSKOW,
Editor.
Sworn to and subscribed before me this 1st day of March, 1950.
(Seal) j. i. MOSKOW,
Notary Public,
My Commission expires Aug. 24, 1956.