### ANNA BUTLER *vs.* ROY W. LAYTON.

Suffolk.    November 8, 1928. — January 31, 1929.

Present: RUGG, C.J., CROSBY, CARROLL, WAIT, & SANDERSON, JJ.

*Proximate Cause.  Evidence*, Presumptions and burden of proof.

At the hearing in this court of exceptions saved by the defendant at the
trial of an action of tort against a physician and surgeon for damages
alleged to have resulted from negligence of the defendant in administering ether to the plaintiff when she had a cold, as a result of which she
contracted bronchitis, the defendant did not contend that there was
not evidence of the negligence alleged, but did contend that a verdict
should have been directed in his favor because there was no evidence
that such negligence "was the cause, in whole or in part, of the plaintiff's succumbing to acute bronchitis."  From the record it appeared
that the plaintiff began to cough and sneeze and have inflammation in
her bronchial passages about two weeks after the operation.  The
family physician, qualified as an expert, testified that, when ill consequences follow the administration of ether, the results are pneumonia
and bronchitis, the symptoms appearing very quickly, "usually they
will go four or five days," and that the usual case "appears in two or
three days."  He was asked: "Assume . . . that two weeks after the
operation during which period . . . [the plaintiff] was at home, she
began to cough and sneeze and felt some congestion of the bronchial
passages.  What relation in your opinion did the etherizing have to

that condition?" and answered: "It caused that condition." *Held,* that it could not rightly be said that there was no evidence of any causal connection between the administration of ether to the plaintiff and the bronchitis which thereafter developed.

TORT against a physician and surgeon for personal injuries alleged to have resulted from his negligently administering ether and operating upon the plaintiff when he knew that she had a cold. Writ dated January 14, 1926.

In the Superior Court, the action was tried before *Raymond,* J. Material evidence is stated in the opinion. There was a verdict for the plaintiff in the sum of $14,000, which, in accordance with an order of the court, was reduced by remittitur by the plaintiff to $9,000. The defendant alleged exceptions.

*R. Homans,* (*L. E. Keeley* with him,) for the defendant.

*M. C. Kelleher,* for the plaintiff.

CROSBY, J. This is an action for damages caused by the alleged negligence of the defendant, a physician and surgeon, in failing to exercise proper professional skill. It is the contention of the plaintiff that she became afflicted with bronchitis as the result of the administration of ether to her when she had a severe cold. The ether was administered in the course of an operation performed by the defendant on June 22, 1925, for the removal of the plaintiff's tonsils. The jury could have found that at the time the ether was administered the plaintiff had a severe cold and that she informed the defendant to that effect before the operation was performed. There was also evidence tending to show that except in case of emergency it was improper medical practice to administer ether to a patient who was suffering from a severe cold.

The defendant states in his brief that he does not contend that "there was not evidence for the jury to consider on the question of whether the defendant had failed to exercise reasonable professional skill in giving ether to the plaintiff. What the defendant does now contend, and what is the foundation of the only exception in the case . . . is that a verdict should have been directed for the defendant on the ground that, assuming the defendant failed to exercise reasonable professional skill, there was no evidence that such failure was

the cause, in whole or in part, of the plaintiff's succumbing to acute bronchitis."

The plaintiff testified that she went home from the hospital the day after the operation; that her throat was very painful; that the first thing she noticed, apart from where her tonsils had been removed, was thàt, about two weeks after she left the hospital, she started coughing and sneezing, as soon as she was able to cough on account of her throat which was very hard, and had a feeling of congestion in the chest which she had not noticed before she began to cough; that she called the defendant on the telephone and told him of her condition; that he said he could not see her as he was operating; that he advised her to go to New Hampshire; that she went there and returned in two weeks, and saw the defendant about the middle of July, 1925; at that time he advised various remedies, and at a later date told her "the cold was beyond him."

The plaintiff's family physician testified that he had been associated with the Boston Dispensary Lung Department, with the Boston Association for the Relief and Control of Tuberculosis, and with the Boston Sanatorium, where cases of lung and bronchial infection are treated; that he was at the time of the trial associated with the board of health, division of tuberculosis, and an instructor in pulmonary diseases at Tufts College; that he had etherized many hundreds of patients and had attended operations where ether was administered by others; that the effect of etherization of a person having a head cold would be "an extension of the process downward"; that by process he meant infection and a head cold would be an infectious process in the head; that the effect of ether on a person who had a head cold would be a carrying of the inflammation downward; that the inflammation increases the secretion and that increases the amount of infection "reducing the amount of air coming in and out" which would cause bronchitis. This witness further testified that when ill consequences follow the administration of ether the results are pneumonia and bronchitis, the symptoms appearing very quickly: "usually 'they will go four or five days'"; that "The usual case of the bad effects of ether invariably appears in two or three days . . . . Perhaps one of the very

uncommon bad effects of ether may be bronchitis coming within a few days after the operation without fever"; that he had one case of that kind in 1916, the only one he ever had in his practice; that "Bronchitis may come from other causes besides the administration of ether." He was asked on direct examination the following hypothetical question: "Assume . . . that two weeks after the operation during which period she [the plaintiff] was at home, she began to cough and sneeze and felt some congestion of the bronchial passages. What relation in your opinion did the etherizing have to that condition?" He answered: "It caused that condition." He further testified that the etherizing on June 22, 1925, was the cause of the plaintiff's condition at the trial, and that other conditions of the patient stated did not account for a condition of bronchitis to the same extent as the effect of the ether administered by the defendant, and that the cold the plaintiff had did not cause the bronchitis.

The defendant testified that it would be improper to administer ether to a person having a bad head cold or a bad cold involving the head and chest; that such treatment would not only be improper but would subject the patient possibly to serious consequences. He also offered evidence tending to show that the ill effects of administering ether would develop, if at all, within three or four days in case of bronchitis, and that with acute bronchitis there is a rise of temperature and increase of pulse.

Upon the evidence the jury could have found that on both the day before and the day of the operation the plaintiff was suffering from a cold; that the defendant was advised of that fact by the plaintiff and knew or in the exercise of reasonable skill and diligence ought to have known that she was so suffering; that in these circumstances he administered ether to her and performed the operation. It also could have been found upon the evidence and the reasonable inferences to be drawn therefrom that about two weeks after the operation she was suffering from acute bronchitis as the result of the administration of ether. She testified on cross-examination that she coughed within two weeks after the operation but that it was very hard to do so as her throat was so sore; that she was in

bed for a week after the operation; that she felt too sick to know whether she had fever or not, and had no fever so far as she knew.

Although it may be assumed that the presence of bronchitis might result from causes other than the administration of ether, it cannot be said as matter of law that the jury were not warranted in finding that the ether administered by the defendant caused the plaintiff to have bronchitis.  Upon such a finding it could be further found that the defendant failed to exercise reasonable skill and diligence in treating her.  *Harriott* v. *Plimpton,* 166 Mass. 585.  *Toy* v. *Mackintosh,* 222 Mass. 430.  *Chesley* v. *Durant,* 243 Mass. 180. *Whipple* v. *Grandchamp,* 261 Mass. 40.  In view of all the testimony it cannot rightly be said that there was no evidence of any causal connection between the administration of ether to the plaintiff and the bronchitis which thereafter developed. In other words, the cause of the plaintiff's illness does not rest upon mere conjecture and speculation.  *Childs* v. *American Express Co.* 197 Mass. 337.  *Cohen* v. *Henry Siegel Co.* 220 Mass. 215, 219.  The cases cited by the defendant are distinguishable from the case at bar.

On the question of the defendant's liability the case is close, but we are of opinion that a verdict could not properly have been directed for the defendant.

*Exceptions overruled.*