PAUL VIGNEAULT *vs.* DR. HEWSON DENTAL COMPANY.

Worcester.    September 28, 1937. — May 23, 1938.

Present: RUGG, C.J., FIELD, DONAHUE, & QUA, JJ.

*Negligence,* Of dentist.    *Proximate Cause.*

Findings by an auditor, whose findings of fact were to be final, that a method adopted by a dentist to administer novocaine before extracting teeth from an infected area was less safe than another method for which he did not have the necessary equipment, and caused osteomyelitis of the jaw bone, a serious disease, and that in using the method he did he failed to exercise the skill ordinarily exercised in the locality where he was practising, warranted conclusions that he was negligent and that his negligence caused injury to the patient, although the auditor also found that the danger of causing the osteomyelitis by the method used was remote.

TORT. Writ in the Central District Court of Worcester dated October 11, 1935.

Upon removal to the Superior Court, judgment for the plaintiff in the sum of $4,450 was ordered by *Burns,* J.

*H. W. Sullivan,* for the defendant.

*J. A. Crotty,* for the plaintiff.

FIELD, J. This is an action of tort to recover compensation for personal injuries sustained as a result of alleged negligent treatment of the plaintiff by dentists employed by the defendant. The case was referred to an auditor whose findings of fact were to be final. The auditor filed a report. Both the plaintiff and the defendant filed motions

for judgment on the report. The trial judge denied the motion of the defendant and allowed the motion of the plaintiff. The defendant excepted. See *Pittsley* v. *Allen*, 297 Mass. 83, 85.

There was no error.

Since the auditor's findings of fact were to be final his report constituted a case stated. See *Merrimac Chemical Co.* v. *Moore*, 279 Mass. 147, 151–152; *Brodie* v. *Donovan*, 298 Mass. 69, 71. This report contained, among others, the following findings of fact: The defendant was engaged in the dental business in Worcester, employing two licensed dentists. See G. L. (Ter. Ed.) c. 112, §§ 49, 50; *Bates* v. *Dr. King Co.* 191 Mass. 585; *McDonald* v. *Dr. McKnight, Inc.* 248 Mass. 43. In June, 1935, the plaintiff's mouth was infected. On June 24 one of these dentists extracted one of the plaintiff's teeth. The same dentist extracted another tooth on June 25 and two others on June 26. The other dentist extracted four teeth on July 2. "The teeth were extracted upon the advice of the two dentists who extracted them. There was pus in and about the sockets of all the teeth which were extracted. Before each of the eight extractions, novocaine was injected by a needle, which is hollow, with an opening near the end, through which the novocaine is forced by pressure. The needle part is about one-quarter of an inch long. It was sterilized before it was used, and was of a kind and size in general use by dentists. Before each extraction, the needle was inserted three times in the gum near the tooth to be extracted, twice in the gum in front of the tooth and once in the gum back of the tooth. No x-rays were taken." "The defendant did not have equipment for administering gas." The plaintiff paid the uniform price charged by the defendant for each extraction. On July 6 the plaintiff entered a hospital where the "clinical diagnosis of the patient . . . was osteomyelitis of the jaw bone." This diagnosis "was later confirmed by x-ray pictures." The auditor inferred from this diagnosis "and from what x-rays disclosed later as to the probable time when it began" that the plaintiff had osteomyelitis on July 2. Osteomyelitis of

the jaw bone "is an infection of the hard and soft parts of the bone caused by the staphylococcus germ getting into the bone. . . . a serious and very painful disease." The "dentists in inserting the needle where they did, did not exercise the skill ordinarily exercised by Worcester dentists at that period, and . . . they were negligent in so doing." On "the whole evidence in this case" this negligence on June 24, 25 and 26 "was an adequate cause of the osteomyelitis, and . . . did in fact cause it." The auditor found for the plaintiff in the sum of $4,450. The report contains other statements in the nature of subsidiary findings.

The defendant does not contend that the amount of the damages found was improper if there was any liability on the defendant, or that the defendant was not liable for negligence, if any, of the dentist who extracted the plaintiff's teeth on June 24, 25 and 26, causing injury to the plaintiff. The defendant's contention is that on the facts found this dentist's treatment was not negligent and was not the cause of the osteomyelitis of the plaintiff's jaw bone. But the ultimate findings that the dentists were negligent, and that this negligence of one of them on June 24, 25 and 26 was the cause of the plaintiff's osteomyelitis — which do not purport to be based solely on subsidiary findings, compare *Marden* v. *Howard*, 242 Mass. 350, 355; *Edinburg* v. *Allen-Squire Co.* 299 Mass. 206, 207— are conclusive unless vitiated by error of law apparent on the face of the report, or met or controlled by other findings or by inferences to be drawn from the facts expressly found. And they are not so vitiated or met or controlled.

The duty resting upon the dentist who extracted the plaintiff's teeth on June 24, 25 and 26 — breach of which would constitute negligence — included the duty to "exercise the skill ordinarily exercised by Worcester dentists at that period," which the auditor found was not performed. See *Ernen* v. *Crofwell*, 272 Mass. 172, 175; *Semerjian* v. *Stetson*, 284 Mass. 510, 512–513; *Bouffard* v. *Canby*, 292 Mass. 305, 309. Even if it be assumed that such a finding could not be made by the auditor without the

benefit of expert testimony (compare *Marangian* v. *Apelian*, 286 Mass. 429, 436; *Gabrunas* v. *Miniter*, 289 Mass. 20, 22; *Bouffard* v. *Canby*, 292 Mass. 305, 309), it appears from the report that such testimony, tending to support the finding of the auditor, was introduced in evidence. The auditor states that the "expert evidence was highly conflicting, not only as to which method of anesthetizing by a needle was preferable, but also as to the percentage of Worcester dentists who would use the 'deep block' in preference where a mouth was infected as was the plaintiff's." The auditor's report adopts, as a description of the "deep block" method of anesthetization, a method whereby the needle is inserted near one or both of the two holes into the lower jaw bone which are back of the back teeth. The mere fact that the "expert evidence" was "highly conflicting" does not show that the auditor's finding of negligence was wrong. It was for him to decide what expert testimony he would believe. *McDonough* v. *Metropolitan Life Ins. Co.* 228 Mass. 450, 453.

The defendant contends that the findings that the dentist was negligent and that such negligence caused the plaintiff's osteomyelitis could not properly be made because it was not found that the needle used by this dentist was inserted in the infected area of the plaintiff's jaw bone. Even if not specifically found it is clearly a natural inference from the findings above recited that the needle was so inserted. The defendant contends further that the osteomyelitis was not so caused because, as matter of common knowledge, a needle "about one-quarter of an inch long" could not have penetrated to the bone. But neither common knowledge nor anything in the report negatives the possibility of penetration to the bone or of osteomyelitis being caused without such penetration. Indeed the report states that the "plaintiff's evidence tended to show" — though the auditor did not expressly find — that by inserting "a needle in and through an infected area" "the jaw bone might be infected either by injuring the periosteum, or even without that by forcing the bacteria further into the tissues." The auditor, however, expressly

found that "The danger of causing infection to the bone by injecting the needle as the dentists did was remote. . . . that the danger would have been less by the 'deep block' method. The defendant's dentists did not have needles of the required length for that method. One of them had used it before he was employed by the defendant, and the other had never used it. It was a well-known method, and . . . the defendant's dentists should have sent the plaintiff to a dentist who could have given him gas, or to one equipped to use the 'deep block' method, rather than to have undertaken a less safe method, which might cause a serious illness, even although the danger was remote."

The defendant contends that negligence could not rightly have been found since "the danger was remote." But remoteness of danger is a matter of degree. Though the danger was remote it might, none the less, involve an unreasonable risk of harm to the plaintiff to which the dentists, in the exercise of the skill required of them, should not have exposed him. See Am. Law Inst. Restatement: Torts, §§ 291 (1), 297, 299, 307. This is particularly true where, as here, the possible harm was of a serious nature. See *Ogden* v. *Aspinwall*, 220 Mass. 100, 104–105; *Butler* v. *Layton*, 266 Mass. 117, 120; Am. Law Inst. Restatement: Torts, § 293 (c) and Comment. A finding of negligence was not precluded, even though there was a substantial probability that harm might not actually result from the use of this method of anesthetization. A choice by a dentist of a "less safe method" rather than another "well-known method" may constitute failure to exercise the requisite skill in extracting the plaintiff's teeth. See *Galvin* v. *Old Colony Railroad*, 162 Mass. 533. There is nothing in the findings of the auditor to show that any emergency required the use of the "less safe method" or that a safer method was not available for the plaintiff at the hands of some other dentist. Nor is there anything in the findings inconsistent with the finding that the defendant's dentists should have advised the plaintiff to employ another dentist equipped to use a safer method of anesthetization rather than to have "undertaken a less safe method." Such

may be the duty of a dentist who, for any reason, is unable personally to exercise the skill ordinarily exercised by dentists in the community. *Mallen* v. *Boynton,* 132 Mass. 443, 446. See also *Small* v. *Howard,* 128 Mass. 131, 136. The finding of negligence must stand.

*Carlen* v. *Gaw,* 292 Mass. 398, particularly relied on by the defendant, is distinguishable. That case held that the evidence did not warrant a finding that the defendant was negligent in extracting the plaintiff's tooth, though there was evidence that there was danger in so doing. According to the evidence in that case the method of anesthetization used was somewhat similar to the method used in the present case, but there was no evidence that any safer method was ordinarily used by dentists in the community.

The defendant urges that on the facts found by the auditor the negligence of the dentist on June 24, 25 and 26 did not cause osteomyelitis of the plaintiff's jaw bone. The auditor, however, found expressly that it did. His report on this branch of the case is as follows: "As to what was done June 24, 25 and 26: There was much evidence tending to show that osteomyelitis of the jaw bone very rarely comes except through interference. It sometimes does. And there was some evidence that it just as frequently comes without interference as with it. On the whole evidence, I find that it comes more frequently from interference. While recognizing that mere conjecture that the osteomyelitis was caused by what the dentist did on June 24, 25 and 26 does not amount to proof, and although I have found that it does sometimes come without any interference whatsoever, yet I find on the whole evidence in this case that the negligence specified in paragraph *10* [a paragraph of the report headed "Anesthetization by use of a needle put into and through the infected area"] of what was done on those dates was an adequate cause of the osteomyelitis, and that it did in fact cause it." The plaintiff was required to establish that the negligence of the dentist was the reasonably probable cause of the disease, but was not required to exclude all other possible causes thereof. *Young* v. *New*

*York, New Haven & Hartford Railroad,* 273 Mass. 567, 570. *Blanchard's Case,* 277 Mass. 413, 415. The findings eliminated as less probable any cause of osteomyelitis other than what was done by the dentist in connection with extracting the plaintiff's teeth. But the defendant argues that extraction independent of negligence in anesthetization is not eliminated as a cause. On the findings, however, either extraction, as such, or negligent anesthetization, without the other factor, might have been sufficient to produce the result, and the result followed from what was done by the dentist. In this situation the dentist's "negligence may be regarded as a substantial factor in bringing about the harm in spite of the fact that the same harm might possibly have been sustained had . . . [he] not been negligent." Am. Law Inst. Restatement: Torts, § 432, specially Comment c. The negligence of the dentist, on the ultimate and subsidiary findings, was a cause in fact of the plaintiff's injury, not too remote to be a legal cause thereof imposing liability on the defendant. See *Bates* v. *Dr. King Co.* 191 Mass. 585, 586.

*Exceptions overruled.*