GEORGE R. LANGIS *vs.* GEORGE H. DANFORTH.

EVARISTE LANGIS *vs.* SAME.

Essex. November 7, 1940. — April 2, 1941.

Present: FIELD, C.J., DONAHUE, LUMMUS, QUA, & DOLAN, JJ.

*Negligence,* Dentist. *Witness,* Expert.

No error appeared in a preliminary finding that a dentist, offered as an expert on the use of nitrous oxide, was not qualified to testify on that subject where it appeared that he had not used nitrous oxide for twenty-five years.

Testimony by a dentist, defendant in an action by a patient for personal injuries, that a dentist having the care of a patient made unconscious by inhalation of nitrous oxide must be careful as to what the patient might do in coming out of its effects, and evidence that the defendant, knowing that, because of the gas he had administered, the plaintiff was unconscious or semiconscious or potentially violent, had left him unattended except by an insufficiently trained nurse, whereupon the plaintiff either fell or plunged through a nearby window, would have warranted a finding of negligence of the defendant which caused injuries thus sustained by the plaintiff.

TWO ACTIONS OF TORT. Writs in the Superior Court dated April 28 and June 8, 1938, respectively.

Verdicts were returned for the defendant by order of *Donahue, J.*

*J. J. Foley,* (*W. E. Carey* with him,) for the plaintiffs.

*J. W. Sullivan,* (*C. J. Dunn* with him,) for the defendant.

DOLAN, J. These are two actions of tort. In the first action the minor plaintiff seeks to recover for personal injuries sustained as a result of the alleged negligence of

the defendant. The second action was brought by the minor's father for consequential damages. The cases were tried to a jury and at the close of the evidence the judge allowed the motion of the defendant in each case for a directed verdict in his favor. The cases now come before us on the plaintiffs' exceptions to the allowance of those motions and to the exclusion of certain evidence. The minor plaintiff will be referred to hereinafter as the plaintiff.

The evidence would warrant the jury in finding the following facts: On March 5, 1938, the plaintiff went to the office of the defendant, a dentist, for the purpose of having two teeth extracted. The defendant's offices were located on the second floor of a certain building in Lynn. The plaintiff was accompanied by two friends who left him when he entered the defendant's office, but who agreed to return and wait for him in the defendant's reception room.

After his arrival the plaintiff was seated in a dental chair in a room adjoining the reception room. The defendant administered nitrous oxide to him by inhalation. This treatment lasted for several seconds. The defendant also administered an injection of novocaine, and while waiting for it to take effect slipped into an adjacent room to attend another patient. Returning, he gave the plaintiff another injection of novocaine and again left the room where the plaintiff was seated, remaining absent for about twenty minutes, while the plaintiff's gums were in the process of becoming anaesthetized. Returning, the defendant commenced to extract the two teeth. During this operation, which consumed some thirty or forty seconds, nitrous oxide was administered to the plaintiff. In the meantime, the plaintiff's companions had returned and entered the defendant's reception room, where they sat waiting for the plaintiff. They saw the defendant leave the office where the plaintiff was seated in a dental chair, on two occasions. On the second occasion they did not see him return to the office where the plaintiff was, and shortly after the defendant had left that office they heard a crash of glass and heard a woman scream, "He has gone through the window." A nurse rushed out of the room in which the plaintiff had

been, and ran down the stairs to the street, followed by the plaintiff's two friends. The latter did not see the defendant from the time of his departure from that room prior to the accident. The window through which the plaintiff fell was "about five feet wide and about six and one half feet tall and the sill of said window was about two feet up from the floor of the dental office," and was made of plate glass about one quarter of an inch thick. The dental chair in which the plaintiff had been seated faced this window. The sill of the window was low enough so that "if a person were in an unconscious state or in a hangover stage and were up against it, the sill would hit . . . [him] at the knee or slightly above it, but as to that it would depend upon the height of the individual; . . . if it hit about the knee the person . . . would be likely to be thrown up against the window." A nurse was in the room with the plaintiff when he fell or leaped through the window, which was twenty or twenty-five feet above the sidewalk. The plaintiff knew nothing after the "gas" was administered to him. The next thing he remembered was waking up in the hospital two and a half to three weeks later.

Certain evidence that was offered by the plaintiff through a practising dentist to show the effect upon a patient of the inhalation of nitrous oxide and the difference between its effects and those caused by the inhalation of ethyl chloride, which the witness had used for twenty-five years because the latter was "safer," was excluded by the judge, who refused to allow the witness, who had not used nitrous oxide for twenty-five years, to testify as an expert, on the ground that he did not have the necessary qualifications.

We cannot say that there was error in refusing to admit this testimony although doubtless it could have been admitted. Its exclusion was based on the ground that the judge was not satisfied with the qualifications of the witness. Except in rare instances where, as matter of law, the exclusion of the proffered evidence would be unwarranted, the preliminary question of the qualification of a witness called as an expert must rest with the trial judge. *Corrao* v. *Sears, Roebuck & Co.* 298 Mass. 23, 26, and cases cited. See also

*Commonwealth* v. *Sturtivant,* 117 Mass. 122, 137; *Adams* v. *Bolton,* 297 Mass. 459, 462; *Goodyear Park Co.* v. *Holyoke,* 298 Mass. 510, 512; *Carbonneau* v. *Lachance,* 307 Mass. 153, 155; *Commonwealth* v. *Capalbo, ante,* 376, 380. In view of the fact that in the instant case the witness had not used nitrous oxide in the practice of dentistry for over twenty-five years, it cannot be said that in refusing to admit his testimony there was any abuse of discretion by the judge.

The defendant contends that the present case is one in which the defendant's responsibility is left to conjecture, and one in which "in order to recover the plaintiff needed expert testimony to establish a basis for an inference of negligence," citing *Tallon* v. *Spellman,* 302 Mass. 179, and cases there collected.

It is settled that the defendant's duty to the plaintiff was to use the care and skill of the ordinary practitioner of dentistry in the community in which he practised his profession, and that "It is only in exceptional cases that a jury instructed by common knowledge and experience may without the aid of expert medical opinion determine whether the conduct of a physician toward a patient is violative of the special duty which the law imposes as a consequence of this particular relationship." *Bouffard* v. *Canby,* 292 Mass. 305, 309, and cases cited. See also *Vigneault* v. *Dr. Hewson Dental Co.* 300 Mass. 223, 225, 227; *Tallon* v. *Spellman,* 302 Mass. 179, 183, and cases cited; *Borysewicz* v. *Dineen,* 302 Mass. 461, 464. See cases collected in 129 Am. L. R. 104 *et seq.*

In the present case, however, although the expert opinion offered by the plaintiff was excluded, the jury were not left to common knowledge and experience in determining whether the defendant violated the special duty imposed upon him, and was negligent in his conduct toward the plaintiff, since the defendant testified at length with relation to the use of nitrous oxide in the extraction of teeth and the effects of its inhalation by patients. He testified in substance that he intended to administer only enough nitrous oxide to bring about a state of analgesia; that he

knew that if he administered more of the nitrous oxide than was needed to produce that state, that is, a condition in which a patient's sense of pain is numbed and his nerves quieted and in which he would have free control over his mental and other sensitory faculties, it became "an anaesthetic" on the patient, leaving him "entirely unconscious and entirely in the power of the dentist"; that such a "use of this gas is really a 'quick drunk' and so affects a man's nervous system that his reflexes and nerves are in such a state that he has no control over them"; that different persons react quite differently to the inhalation of nitrous oxide; that a dentist must be aware of and try to guard against the unexpected conduct of persons who are coming out of this "quick drunk"; that a dentist having the care of a person made unconscious by the inhalation of this gas must be careful as to what the patient might do in coming out of the effects of it; that "some will laugh, some fight and some boast"; that after he had extracted the two teeth of the plaintiff, he spoke to him, but he did not answer; that he asked the plaintiff to open his mouth and he did so; that a nurse was at all times in the room with the plaintiff; that she had been employed in the dental office for about a year; that she had not had any special training "along those lines"; that she had not attended any school to learn "that work but that whatever she had learned about dental work she learned from her experience in this dental office."

As before pointed out, the jury could find that the defendant left the office in which the plaintiff was operated upon, after extracting the teeth, and did not return before the plaintiff fell or leaped through the window. The jury could also find that the plaintiff was in fact rendered unconscious or semiconscious by the administration of the nitrous oxide, and that he was in that state when the defendant left the room after extracting the teeth.

In all these circumstances, we think that the jury were competent to pass on the question whether the defendant was negligent in leaving the unconscious or semiconscious and potentially violent plaintiff in the care of a nurse who

was without special training. We are of opinion that, on the evidence, the questions whether the defendant was negligent and whether his negligence bore a causal relation to the plaintiff's injuries presented issues for the determination of the jury.

In each case the plaintiff's exception to the granting of the defendant's motion for a directed verdict must be sustained, and it is

*So ordered.*