*Southern District*

No. 10545

**EDWIN W. THOMAS**

v.

**ALVINA MAY WHITE**

*Cox, J.* This is an action of contract to recover a balance alleged to be due the plaintiff by the defendant for professional services as a dentist.

The defendant's answer was a general denial and payment. It also contained a declaration in set-off and recoupment, alleging negligence in the services allegedly performed. To this pleading, the plaintiff answered with a general denial, that the claim of the defendant was not liquidated, and the statute of limitations. There was a finding for the plaintiff.

The defendant seasonably filed twenty-seven requests for rulings of law. The judge denied those numbered: 1, 3, 4, 9, 10, 12, 13, 14, 15, 16, 17, 18,

19, 20, 21, 22, 23, 25, 26 and 27. The case is re-ported because the defendant claims to be aggrieved by the denial of these requests and the finding against her. All the material evidence is reported.

There was evidence that the plaintiff was a duly licensed dentist and a graduate in 1946 of George-town Dental School. He maintained his principal office in the Mattapan District of Boston and also what is described as an "auxiliary office" at his residence in Stoughton. In his auxiliary office, he maintained a dentist chair and dental equipment, but no x-ray apparatus. On June 7, 1949, the defendant, a mature woman, visited the plaintiff at his home because she was suffering from a "terrible toothache". She was otherwise apparently in good physical condition. The plaintiff examined the defendant and ascertained that she had only six upper teeth remaining, three on each side. Ocular examination, with the assistance of the usual small mirror and probing with small instru-ments, revealed "mild" pyorrhea about the base of these teeth, that they were "very badly decayed" and had "migrated", that is, they lacked lateral support, and, as a conseqoence, leaned sidewise and were loose in their sockets. The plaintic advised extraction of the upper teeth and a full upper denture. He applied a local anesthetic and extracted all three teeth on the left side of the defendant's mouth, namely, the left cuspid, upper left bicuspid and left first molar. The plaintic testified that, under the circumstances, he did not consider a preliminary x-ray examination as necessary. The plaintiff never took or advised the taking of x-rays of the defendant's teeth. All the teeth pulled came out entire and without difficulty. The defendant testified that when one of the teeth was extracted, she "felt something snap", but there was no evidence to show that any part of any tooth or any other structure was broken, or to contradict the testimony of the plaintiff that all the teeth came out "entire".

On cross examination, the plaintiff produced his

record relating to his examination and treatment of the defendant. There was printed thereon a picture series of the teeth with space for medical history and a space to insert the charge and payments made for dental services. The only portion of this medical record which was written in or upon, was a charge made for the dental services and payments made on account. The plaintiff conceded that this record and his own ocular examination represented the only record of diagnosis and treatment he had of the defendant's teeth.

When the defendant returned to her home after the extraction of the teeth, she testified to having experienced considerable pain in the areas of the extractions. The left side of her mouth was swollen and she experienced nausea. She summoned a medical doctor to her home the next forenoon. He examined her condition and prescribed sulfa drugs and penecillin, the latter in pill form. The next day, the defendant experienced a stuffed-up feeling in her nose, a sensation of peculiar odors and pus discharge from her nose. She visited the doctor several times thereafter in his office. The report does not state what, if any, treatment was administered or medication prescribed.

The defendant again went to the plaintiff's office and had the three remaining teeth extracted. In August, the plaintiff made an upper denture for the defendant. No evidence is reported that the denture did not fit well or that it was defective in any manner. The defendant paid the plaintiff on account of his bill, $5.00 on April 7, 1950, $5.00 on August 4, 1951 and $5.00 on August 12, 1951. Later in August 1951, the plaintiff asked the defendant for further payment. There was testimony that the defendant told the plaintiff of the trouble she was experiencing in the left part of her mouth and further testimony by the plaintiff that the defendant said she would pay the bill if it were not for "financial difficulty". There was a further payment of $5.00 by the de-

fendant on September 26, 1951. The action was entered on April 26, 1952.

On January 22, 1951, approximately seventeen months after the first extraction, the defendant, on the advice of a doctor, went to the Massachusetts Eye and Ear Infirmary for treatment of a nasal condition. From the record of the Infirmary, it appears that the defendant's chief complaint was "Facial pain left side extended to left ear with nasal discharge, very foul." Under the caption "Present Illness", the record states (obviously from information furnished to the Infirmary by the defendant) "Teeth pulled in June 1949, among them left upper canine with sharp pain located in left eye. 'Infection' was recognized by local physician and treated by sulfa drugs and penecillin for three days, without relief of pain. At this time, greenish foul discharge left nostril, cacosmia, headache frontal supraciliary left more than right, increased lowering head or blowing nose, usually cyclic, starting at 11 a.m. - 1-2 p.m. - staying until patient goes to bed. Discharge follows almost same rhythm. Sun increases symptoms also. Symptoms have been present rather constantly since then. Occasional periods of fever. Before this (suddeni onset patient had no sinus trouble, no headaches."

Physical examination at the Infirmary, March 5, 1951, disclosed "Obese and not actually ill female". "*Nose*: Septum deviated to the left with partial left airway obstruction. There is thin yellow pus in the left middle meatus and on the left nasal floor." "*Nasopharynx*: Pus in left vault."

The Infirmary reports that "Anesthesia, endotracheal ether, was administered and that a Submucous resection was done in the usual manner. A linear incision in the left septal mucosa, the mucosa elevated far back, the cartilage incised and the mucosa elevated from the right side in a like manner. All deviated cartilage was removed by means of Ballanger swivel knife, deviated perpendicular plate of the ethmoid and a large vomer spur were removed by means

of Jansen forceps, and chisel. The incision was closed by means of interrupted 3-0 catgut."

The defendant offered in evidence dental textbooks and treatises from which extracts were prepared and incorporated in the report by reference, so far as relevant.

The medical doctor who attended the defendant was not a witness. There was no medical testimony offered by the defendant, other than the record from the Massachusetts Eye and Ear Infirmary, so far as that may be relevant, to the effect that the nasal condition of the defendant was attributable to the dental extractions.

The judge made findings of fact. In referring to the extracts from the dental textbooks, the judge observed that "in their aspect most favorable to the defendant, these, in effect, merely stated that as a general proposition an x-ray examination prior to an extraction was advisable, none went so far as to state it was mandatory." He further observed that, except for the extracts, "there was no medical testimony offered by the defendant, to the effect that the examination was insufficient, unskillfully performed, was inadequate under the circumstances, or did not otherwise meet the requirements of skill of the dental profession. There was no medical testimony that an x-ray was a mandatory precedent to all extractions in order to have such meet the requirements of dental skill or that it was required in this particular case." The judge referred to the plaintiff's testimony, with apparent approval, that the plaintiff did not consider an x-ray necessary, as his examination sufficiently disclosed the condition of the defendant's teeth. He found that all the teeth came out entire and without any difficulty, that the plaintiff rendered such after treatment as was required, and that he made the denture. The judge found that there was no evidence that the denture was in any manner unsatisfactory. He also found that the plaintiff's services performed for the defendant were with the skill required and

established the balance due the plaintiff for his services.

The defendant's answer contained a declaration in "set-off and recoupment". The unliquidated nature of her claim precludes set-off. G. L. (Ter. Ed.) c. 232, s. 1. *Tegelaar Brothers, Inc. v. Hanflig*, 286 Mass. 363, 366, 367. Given its true character, the pleading is treated as a claim by the defendant for damages by way of recoupment. "The right to recoup is the right to have unliquidated damages ascertained and applied in reduction of the plaintiff's demand, although the plaintiff cannot have judgement for any excess." *Barnett v. Loud*, 226 Mass. 447, 450. *Tegelaar Brothers, Inc. v. Hanflig*, 286, Mass. 363, 366, 367. Another characteristic of the right of recoupment is that it "must arise out of something connected with the contract alleged, not out of something separate and apart from it." *Western Newspaper Union v. Dittemore*, 264 Mass. 74, 78. *Eastern Mass. Street Railway Co. v. Union Street Railway Co.*, 269 Mass. 329, 333. Granting that the defendant's claim for recoupment has a direct connection with the contract for dental services, it is, nevertheless, manifest that the defendant cannot recover in excess of the plaintiff's demand, which was found by the judge to be $62.80, including interest to the date of the writ.

As a practicing dentist, it was the plaintiff's duty to the defendant "to use the care and skill of the ordinary practitioner in the community where he practiced his profession." *Bouffard v. Canby*, 292 Mass. 305, 309. *Vigneault v. Dr. Hewson Dental Co.*, 300 Mass. 223, 225; *Langis v. Danforth*, 308 Mass. 508, 511; *Vartanian v. Berman*, 311 Mass. 249, 253. The defendant has the burden to show that the plaintiff was negligent, in the light of that duty, and if the plaintiff was shown to have been negligent, that there was a causal connection between such negligence and her injuries. This must "be shown by proof and not rest upon conjectured or speculative inferences." *Marangian v. Apelian*, 286 Mass. 429,

436. Expert opinion is the ordinary method by which to determine whether requisite professional care and skill have been used or neglected, because the lay-man is not instructed by common knowledge and experience in such matters. *Langis v. Danforth*, 308 Mass. 508, 511; *Vartanian v. Berman*, 311 Mass. 249, 253; *Kiley v. Dervin*, 314 Mass. 478, 483, 484. Since the enactment of St. 1949, c. 183, §1 (G.L. c. 233, §79C), a person claiming to have received injuries because of malpractice, error or mistake on the part of dentists and certain others, is aided in proving the claim by being allowed to offer as evidence tending to prove the fact or as opinion evidence, a statement of fact or opinion on a subject of science or art contained in a published treatise, periodical, book or pamphlet. Admission of such evidence is in the discretion of the court, and if the court finds that it is relevant and the writer is recognized as an expert on the subject. A person intending to offer such evidence is required to give certain notice of his intention before trial, to the adverse party. As such evidence was adduced and admitted without objection in the case at bar, it is to be assumed that the judge made all the preliminary findings requisite under the statute. The excerpts, therefore, took their place with the other evidence in the case. *Thomas v. Ellis*, 329 Mass. 93, 98-100.

The judge allowed the defendant's request for ruling numbered 2, that the evidence warranted a finding for the defendant. He denied number 1, to the same effect, except that number 1 stated a finding was warranted for the defendant as a matter of law. In our opinion, the judge was right and his allowance of resuest number 2 was not inconsistent with his finding for the plaintiff, based, as it obviously was, on a consideration of all the evidence. *Hoffman v. Chelsea*, 315 Mass. 54, 55, 56; *Liberatore v. Framingham*, 315 Mass. 538, 541, 542. Without narrating in any detail the excerpts on which the defendant relies, it will suffice to say that, in our opinion, they could,

coupled with the defendant's testimony in her own behalf, support a finding that the plaintiff's failure to take, or advise the taking of x-rays to assist examination of the defendant's teeth before extraction, was negligent. A finding for the defendant on this point, while warranted, was not, however, required. The judge had a question of fact before him and there was other evidence to support his finding in the plaintiff's favor.

It was the right of the judge, as the finder of facts, to accept and base his finding on the testimony of the plaintiff, which has already been stated in detail, and from that testimony to conclude that the plaintiff exercised professional care and skill in extracting the defendant's teeth and the related dental services. He could also find on the evidence that there was no causal connection between the teeth extractions and the physical impairment which took the plaintiff to the Massachusetts Eye and Ear Infirmary. The judge was not required to believe any part of the defendant's testimony tending to show a causal connection between the extraction and her subsequent illness. Indeed, there were formidable reasons for being skeptical of her contention. The defendant returned to the plaintiff for the extraction of the three remaining upper teeth. She made payments on account of the plaintiff's bill on April 17, 1950, August 4, August 12, 1951 and on September 26, 1951. The last three payments were made after she had left the Massachusetts Eye and Ear Infirmary. The first payment was made over a year after the first extractions. There was testimony that the defendant said she would pay the bill were it not for "financial difficulty".

Some of the decided cases touch on some of the symptoms testified to by the defendant and points raised in her behalf. In the case of *Vigneault v. Dr. Hewson Dental Co.*, 300 Mass. 223, which was an action against a dentist for negligent treatment, an auditor's finding for the plaintiff was upheld. The significant thing about that case, so far as the case

at bar is concerned, is that prior to the extraction of teeth, no x-rays were taken. The liability of the dentists rested in that case on the negligent insertion of the needle containing novocaine in the wrong places, not on the fact that no x-rays were taken prior to the extraction. It has been held that the fact that pus appears in a wound being treated did not warrant a finding of negligence. *Tallon v. Spellman*, 302 Mass. 179. It has also been held that the suffering of a patient after treatment did not establish negligence against a dentist. *Borysewicz v. Dineen*, 302 Mass. 461, 464.

There was evidence to justify the judge in finding, as he did, for the plaintiff. See *Van Valkenburg v. Slowick*, 314 Mass. 763, a case arising out of a claim based on negligence by a physician.

The defendant was not harmed by the denial of the defendant's request for ruling number 4, that expert medical testimony is not always essential to proof of negligence. The excerpts from the textbooks and treatises which she offered, were admitted. She offered no other medical testimony pertinent to the time of the extractions.

There was no error in the denial of the defendant's other requests for rulings. Requests numbered 9, 10, 12, 25 and 26 presented in varying forms the contention that the plaintiff was negligent, as a matter of law, in failing to take x-rays to assist him in his examination. The record is not clear as to requests numbered 25 and 26, which raise the same point. In one place in the report, it appears that number 25 was allowed and in another, that it was denied. The same applies to number 26. We dispose of the uncertainty by considering that numbers 25 and 26 were both denied. The judge rightly allowed number 11, that the failure to take x-rays was evidence of negligence. The defendant's rights on this point were respected and safeguarded. The defendant was not harmed by the denial of the other requests on the point. They were rendered immaterial by the finding

that the plaintiff was not negligent. "The judge was not required to give them since upon the evidence they were not required as a matter of law." *Sikora v. Hogan,* 315 Mass. 66, 70. Nor was there error in the denial of requests numbered 3, 13, 14, 15, 16, 20, 21, 23 and 27. They all assumed or stated disputed facts hypothetically relating to alleged negligence on the plaintiff's part. They, too, were rendered immaterial by the judge's finding that the plaintiff was not negligent. *Codman v. Beane,* 312 Mass. 570, 574; *Liberatore v. Framingham,* 315 Mass. 538, 543, 544. Requests numbered 17, 18, 19 and 22 related to the proposition that the defendant was not barred by the statute of limitations. G. L. c. 260, §4, as most recently amended by St. 1943, c. 409, §4. These, too, have become inconsequential, because it has been found that the defendant has not shown a right to recoup.

As no error of law has been shown by the defendant, an order is to be entered dismissing the report.