*Western District*

## MITCHEL MALINOWSKI
### v.
## JOHN HANCOCK
## MUTUAL LIFE INSURANCE COMPANY

(January 16, 1957)

*This opinion has been abridged.*

*Noonan, J.* This is an action of contract in which the plaintiff, as the applicant's owner and beneficiary of an insurance policy on the life of his 13 year old daughter, seeks to recover its value. The policy was issued by the defendant to the plaintiff as of April 24, 1951 in consideration of the written application

therefor (a copy of which was attached to the policy). The insured, Barbara Malinowski, died July 18, 1952, of acute hemorrhage pneumonia. The plaintiff presented proof of death to the defendant insurer and the defendant refused to pay. The answer is a general denial and a further answer that the plaintiff made written misrepresentations and warranties in an application for the insurance, and that such misrepresentations and warranties were made with actual intent to deceive and that the matters misrepresented or warranted increased the risk of loss to the defendant.

The court made the following findings and decision:

"On April 24, 1951, the defendant issued a policy on the life of Barbara Malinowski, who was thirteen years old at the time. The applicant owners of the policy were her parents and the beneficiary of the policy was her father, the plaintiff. Barbara Malinowski died on July 18, 1952. The defendant relies entirely on the affirmative defense set forth in its answer that the application contained written misrepresentations and warranties and that such misrepresentations and warranties were made with actual intent to deceive and that the matters misrepresented or warranted increased the risk of loss to the defendant.

The policy and the application attached to the policy constituted the entire contract between the parties and contained the statements made to the company's agent. The insurance contract required no medical examination.

The plaintiff answered Question 25 and Question 41 in the application as follows:

| "25" Has the proposed Insured | Answer "Yes" or "No" |
|---|---|
| (a) Ever had any illness, injury or disease? | (a) No |

(b) Ever consulted or been treated by any physician or other practitioner? (b) No

(c) Ever been confined to or treated at any hospital, dispensary or clinic? (c) No

(d) Ever had any surgical operation? (d) No

Give full details below if any answer is "yes". Specify every illness, injury, disease, treatment or operation with dates, duration, severity, results and names and addresses of any physicians, hospitals, etc."

"41" Have you during the
 past ten years Answer
 "Yes" or "No"

(a) Had any illness, injury or disease? (a) No

(b) Consulted or been treated by any physician or other practitioner? (b) No

(c) Been confined to or treated at any hospital, sanatorium, dispensary, clinic or similar institution? (c) No

(d) Had any surgical operation? (d) No

Give full details below if any answer is "Yes." Specify every illness, injury, disease, treatment or operation with dates, duration, severity, results and names and addresses of any physicians, hospitals, etc.

These questions were answered by the plaintiff, the father of the insured.

1. Barbara Malinowski, the insured, had epilepsy grand mal prior to the making of the application.

2. The plaintiff knew that Barbara Malinowski, the insured, was suffering from epilepsy grand mal prior to making of the application for insurance.

3. The plaintiff had personal knowledge of her

visits to doctors and various hospitals prior to the making of the application for insurance.

4. The plaintiff made false representations as to the insured's bodily condition or health with actual intent to deceive or misrepresent as to matters which increased the risk of loss to the defendant.

5. Epilepsy grand mal is a disease which increases the risk of loss under a life insurance contract.

6. The father knew of his daughter's fall off the embankment, of the subsequent convulsions and diagnosis of epilepsy grand mal; that he personally took her to doctors and hospitals for care and treatment, all prior to the making of the application for insurance.

And found for the defendant.

The plaintiff made the following requests for rulings:

1. Upon all the evidence, it must be found that the plaintiff made no oral misrepresentations to the defendant's agent.

2. The plaintiff informed the defendant's agent that his daughter had an illness and had seen doctors.

3. The plaintiff informed the defendant's agent his daughter had not seen a doctor, been in the hospital or been ill within the 30 day period prior to the date of the application.

4. Upon all the evidence it must be found that the plaintiff made no written misrepresentations to the defendant.

5. The defendant's agent wrote all the answers to the questions on the application.

6. The plaintiff only signed his name to the application.

7. The defendant's agent knew from past experience and knowledge if the answer to question 25 on the application, in issue was answered "yes" then the person was not insurable and the application would be rejected.

8. If there is no misrepresentation by the plaintiff, then there must be a finding for the plaintiff.

9. The plaintiff did not make any misrepresentations with intent to deceive.

10. The plaintiff did not make any misrepresentations which would increase the risk of loss.

11. If the plaintiff did not make any misrepresentations with the intent to deceive or which would increase the risk of loss then there must be a finding for the plaintiff.

G. L. c. 175, §186 provides:

"No oral or written misrepresentation or warranty made in the negotiation of a policy of insurance by the insured or in his behalf shall be deemed material or defeat or avoid the policy or prevent its attaching unless such misrepresentation or warranty is *made with actual intent to deceive,* or unless the matter misrepresented or made a warranty *increased the risk of loss."*

 The evidence warranted the finding made by the court that the insured was thirteen years of age when the application for insurance was made; that she was suffering from epilepsy grand mal prior to that time; that she had been treated for it for a long period of time; that the plaintiff had personal knowledge of these facts; that in his written application for insurance the plaintiff made false representations as to the insured's health with actual intent to deceive the defendant, and that the misrepresentations increased the risk of loss to the defendant.

Both the intent to deceive and increase of risk were questions of fact to be decided by the Court. *Collins v. Casualty Company,* 224 Mass. 327, 331 where the Court in holding that the burden of proving that the warranty increasing the risk of loss is upon the defendant said "As a general rule it is for the jury to decide whether as matter of fact an affirmative defence has been made out in the evidence."

In the case of *Monjeau v. Met. L. Ins. Co.,* 208 Mass. 1 where the defense also was misrepresentation in the application for the policy the Court said at page 7 "We are of opinion that the questions whether the insured made the statement about the

cause of her mother's death with intent to deceive, and whether the fact that the mother died of consumption increased the risk of loss, were upon the evidence for the jury." and further "The question of intent in each matter was properly left to the jury."

*McCoy v. Metropolitan Life Insurance Company,* 133 Mass. 82; *Long v. Agricultural Ins. Co.,* 251 Mass. 240; *Cass v. Lord,* 236 Mass. 431.

The plaintiff's requests for rulings numbered 8 and 11 were properly ruled inapplicable because of the facts found by the Court.

Those numbered 1, 2, 3, 4, 6, 7, 9 and 10 were properly denied because they are requests for findings of fact and not rulings of law. A finding is not a proper subject for a report, *Rendle Co. v. Conly & Daggett, Inc.,* 313 Mass. 712; *Perry v. Hanover,* 314 Mass. 167.

■ A question put to a witness Mitias (the agent who took the application for the policy) on cross-examination that was excluded was "You are required to write seven or eight policies a week?"

This question was not relevant to the issue in this case. The relevancy of testimony depends upon the question whether it has a rational tendency to prove the issues made by the pleadings or other material issued developed in the course of the trial. Any pressure or persistence exerted by the agent on the plaintiff would be admissable to show his eagerness. But the Court was within its rights in ruling out the question of the number of policies that the agent was required to write in one week.

"How far the *cross-examination* of a witness may be deemed helpful and relevant to the issue being tried, as well as to what extent the accuracy, veracity or credibility of witnesses may be tested, must be left largely to the sound discretion of the presiding judge, and is not open to revision, unless it be shown that such discretion has been exercised in a way that

results in the prejudice of a party to the cause by reason either of too narrow restriction or too great breadth of inquiry." *Jennings v. Rooney,* 183 Mass. 577, 579.

 The question excluded was within the rule. The defendant called as a witness a physician, Dr. Frank Kafferman, who had five years Hospital Training, served in the Armed Forces for four years and who has been an assistant medical director of the defendant insurance company for the last two and one-half years. On direct examination he was asked the question, "Doctor, can you describe what is the cause of an epileptic attack or how it starts?" The plaintiff objected to the question on the grounds that the witness had not qualified as an expert in epilepsy and claimed a report when his objection was overruled.

The witness was qualified and the question properly allowed by the Court.

It is well known that the disease of epilepsy has been made a specialty, but as stated in *Baxter v. Abbott,* 7 Gray 71 at 78: "We think the settled practice in this Commonwealth has been to admit the opinion of educated, practising physicians upon subjects of medical science." *Kramer v. N. Y. L. Ins. Co.,* 293 Mass. 440, 445: "The qualifications of the experts rested largely in the discretion of the presiding judge." *Carbonneau v. Lachance,* 307 Mass. 153 at 155: "The qualifications of an expert are to be determined by the trial judge, and his judgment is seldom overturned." "Except in rare instances where, as matter of law, the exclusion of the proffered evidence would be unwarranted, the preliminary question of the qualification of a witness called as an expert must rest with the trial judge." *Langis v. Danforth,* 308 Mass. 508, 510; *Snow v. Merchants Nat. Bank,* 309 Mass. 354, 362.

There being no prejudicial error committed by the trial judge in the admission of the evidence objected

to or in his disposition of the requests for rulings of law, the report will be ordered dismissed.

Michael J. Donohue, for the plaintiff.

McClintock, Hoar & Houlihan, for the defendant.