Greco, J.
This is a summary process action in which judgment was entered for the plaintiff for possession of the premises and damages in the amount of $39,750.57.
As the caption of the case would indicate, this was essentially a family affair. The premises consisted of approximately an acre and a half of unimproved land in Belmont which was originally owned by Nicholas Sacca, Sr. He conveyed the land in 1990 to his sons Nicholas, Jr. and David who, along with their company, are the defendants in this case. In 1994, however, that conveyance was adjudicated to be fraudulent by the Probate Court and that judgment was affirmed by the Appeals Court in 1999. By 1999, both Nicholas, Sr. and his wife had died and the land had become part of Nicholas, Sr.’s estate. His daughter, acting as executrix of the estate, commenced this suit to evict her brothers. She also sought recovery of damages for their use and occupancy, both for the months they possessed the property as a result of the fraudulent conveyance and for the months they stayed on after the ownership of the property was finally resolved in the Appeals Court.
The defendants used the property to conduct their landscaping business. They stored their equipment there and ran the business out of a trailer they owned and had placed on the land. They had telephone and electrical services, but no water or plumbing. For the period of time they held the property before the Probate Court’s judgment was affirmed, the defendants paid some property taxes to the Town of Belmont. Also during that period, they were required to hire several other companies to remove four oil tanks which were leaking and thereby contaminating the land. They paid those companies $26,209.43 for their services. At trial, the defendants also sought reimbursement for an additional $125,000.00 which they claimed was the cost incurred by their own business in removing the tanks.
After trial, the judge ordered judgment for the plaintiff-executrix for possession. As to damages, he awarded the plaintiff nothing for use and occupancy for the period before 1999 based on his findings that the land had relatively little value to anyone other than the defendants because of the oil contamination of the land, and that any such value would not have exceeded whatever taxes the defendants paid during that period. For the subsequent period of time during which the defendants stayed on after the Probate Court’s decision was affirmed, the judge found that the reasonable amount for use and occupancy was $2,400.00 per month and that, accordingly a total of $79,000.00 was due. The increased rental value of the property during this period resulted from the fact that *32 the contaminated tanks were removed at roughly the same time the Appeals Court affirmed the Probate Court’s decision. The judge based his finding as to a reasonable use and occupancy rate on the testimony of both the plaintiffs expert witness, Gerard Mazzeo (“Mazzeo”), and the plaintiff-executrix herself. Over the defendants’ objection, the judge excluded the proposed testimony of their expert, Steven Kurz (“Kurz”), on the grounds that a different judge had ruled during a pre-trial proceeding that the defendants would not be allowed to call any “consultant” as a witness.
From this $79,000 figure, the trial judge then went on to subtract the following amounts: (1) $1,250.00, representing that portion of the real estate taxes the defendant paid for the months in 1999 following the Appeals Court decision; (2) $26,209.43, for the amounts the defendants paid to other companies to remove the oil tanks; (3) $5,240.00, or 20% of the preceding amount, representing the typical fee a general contractor would assess based on what the subcontractors billed; and (4) $8,000.00, for compensation for the defendants’ own work and for the use of their equipment in removing the tanks. With these adjustments, the resulting award of damages was $38,500.57.[3] In arriving at this amount, the trial judge thus rejected the defendants’ claim that their own costs in removing the oil tanks totaled $125,000.00 (as opposed to the $5,240.00 and $8,000.00 amounts awarded). The defendants argue that the testimony of their expert witness, Kurz, would have been relevant in this regard because he had personally observed the work being done. The offer of proof made by the defendants at trial as to Kurz’ testimony and the circumstances surrounding the pretrial ruling prohibiting “consultant” witnesses will be discussed below.
On appeal, the defendants argue that the trial judge erred: (1) in awarding “back rent,” that is, rent for the period before the ownership issue was finally resolved by the Appeals Court; (2) in finding that the plaintiffs expert was qualified to testify about the rental value of the properly; (3) in allowing into evidence the testimony of their sister, the plaintiff-executrix, as to the rental value of the property; (4) in failing to deduct from the damages awarded to the plaintiff the full amount they expended to remove the oil tanks; and (5) in excluding the testimony of their witness, Kurz.
1. There is no merit in the defendants’ argument that it was error to award the plaintiff “back rent” for the simple reason that no such award was made. The damages assessed related only to the period following the Appeals Courtis decision. We read the trial judge’s findings as merely indicating that even if the plaintiff had a valid claim for back rent, “any such damages would not have exceeded what the defendant had paid in real estate taxes for those years.” Assuming arguendo that the land had no value as rental property for this period, the defendants would not have been able to recoup what they had expended for real estate taxes. “The right to recoup is the right to have unliquidated damages ascertained and applied in reduction of the plaintiffs demand, although the defendant cannot have judgment for any excess.” Stella, Inc. v. Fusco, 48 Mass. App. Dec. 40, 44 (1972). A claim for such an excess would be in the nature of a counterclaim which would not be permitted in this type of action. See Fafard v. Lincoln Pharmacy of Milford, Inc., 439 Mass. 512, 515 (2003) (summary process statute precludes counterclaims in commercial actions).
2. The plaintiff’s expert, Mazzeo, testified at one point that the fair rental value of the premises in Belmont was $2,400.00 to $2,500.00 per month, and than at another time that it was $2,700.00 to $2,800.00. The defendants objected to this testimony on the grounds that Mazzeo was not qualified to testify about rental value, as opposed to the fair market value, of the property itself. “It is well settled that ‘the preliminary question of the qualification of a witness called as an expert must rest with the trial judge.’” Edinburg v. Merry, 11 Mass. App. Ct. 775, 777 (1981), *33 quoting Langis v. Danforth, 308 Mass. 508, 510 (1941). In resolving that question, the “crucial issue is whether the witness has sufficient ‘education, training, experience and familiarity’ with the subject matter of the testimony.” Letch v. Daniels, 401 Mass. 65, 68 (1987), quoting Gill v. North Shore Radiological Assocs., 10 Mass. App. Ct. 885, 886 (1980). “The judge’s ruling will be reversed on appeal only if it constituted an abuse of discretion or was otherwise tainted with error of law.” McLaughlin v. Board of Selectmen of Amherst, 422 Mass. 359, 362 (1996) and cases cited. Of more specific relevance to this case, it has been stated that “[ojrdinarily a real estate dealer or appraiser may testify as to the value of property, whether or not he has seen it or sold land in the neighborhood, if he possesses sufficient experience and knowledge of values of other similar real estate in the particular locality.” Lee Lime Corp. v. Massachusetts Turnpike Auth., 337 Mass. 433, 436 (1958).
In this case, Mazzeo testified that he had been a real estate broker since 1979. He had been involved in the sales and rentals of both residential and commercial properties in Cambridge, Somerville, Belmont and surrounding towns. While he conceded that he had done no leasing work in Belmont for the last ten years, he noted that he had kept himself informed of leasing values by reviewing information on multiple listing services and by word of mouth. In addition, he had “done numerous leasing and sales of industrial sites, commercial properties, and hybrids similar to [the] property... [in this case], both in Cambridge and Somerville markets,” which were economically similar, in his opinion, to the area of Belmont in question. Mazzeo was allowed to testify that after examining the site, its zoning status and its possible use and after reviewing the rates per square foot being charged for industrial space in “contiguous towns,” he was of the opinion that “there’s no way that another comparable user would not pay $2700-$2800 today for the same site,” particularly in view of the scarcity of “vacant lots for landscaping businesses in that particular geography of town..., or for that matter, in the greater Boston area.”
In these circumstances, it was not an abuse of discretion to admit Mazzeo’s opinion testimony While it may have had “certain weaknesses” (compare Giannaros v. M.S. Walker, Inc., 16 Mass. App. Ct. 902 (1983)), it did not amount to mere “speculation.” See Giannasca v. Everett Aluminum, Inc., 13 Mass. App. Ct. 208, 211 (1982). Moreover, it is clear that the trial judge carefully weighed Mazzeo’s testimony. He rejected his view of the site’s rental value for the period before 1999, and did not adopt his post-decision valuation in total.
3. We need not address whether the executrix’s testimony of the fair rental value of the property was properly admitted. She expressed an opinion only as to the rental value of the property from 1991 to 1999. As noted above, the damages assessed by the trial judge related only to the thirty-three months from October of 1999 through June of 2002.
4. The trial judge denied the defendants’ request for ruling of law that they were “entitled to a set off/judgment in the amount of $151,548.43 of improvements to the real property” However, the defendants did not seek a ruling that the evidence was insufficient as a matter of law to permit the award made by the trial judge, as required by Mass. R. Civ. P., Rule 64A(b)(2). Since the trial judge made written findings of fact concerning damages, our review is limited to a determination of whether those findings “are so devoid of support in the record that they are ‘clearly erroneous.’” Mark Moore Homes, Inc. v. Tarvezian, 1998 Mass. App. Div. 171, 172.
The amount sought by the defendants appears to have been comprised of the money they paid subcontractors hired to remove the oil tanks ($26,209.43), twenty (20%) percent of the subcontractors’ bills as the typical fee assessed by a general contractor, and $125,000.00 for their costs in removing the tanks. The trial judge awarded the first two amounts, but gave the defendants only $8,000.00 for their costs. The trial judge’s decision is amply supported by the record. The bill submitted by the defendants and the testimony at trial in support of that bill lacked detail. *34 Moreover, the judge would have been warranted in finding that the defendants were seeking to be compensated for work actually done by the subcontractors. Finally, if the defendants were to be believed, the excavation work, along with the back filling and grading of the land, cost over four times more than the actual removal, cleaning and disposal of the tanks. It was well within the judge’s discretion to find such a claim incredible. As stated in Powers v. H.B. Smith Company, 42 Mass. App. Ct. 657 (1997), “The field of discretion of the trial judge in ... matters [of damages] is very broad. Only in rare instances can it be ruled that there has been an abuse of discretion amounting to an error of law.” Id. at 665, quoting David v. Walent, 16 Mass. App. Ct. 83, 96-97 (1983). This was not one of them.
5. Finally, the defendants argue that the trial judge erred in ruling that Kurz would not be allowed to testify as either an expert or as a percipient witness. As to the former, the trial judge based his ruling on the prior order of a different judge. Nineteen months before the trial, the prior judge denied in part and allowed in part the plaintiff’s motion to compel further answers to interrogatories. With respect to the plaintiff’s interrogatory asking the defendants to give the name and address of any person they “consulted with relative to making [their] counterclaims,” the prior judge indicated that “no consultant will be allowed to testify.” He did so even though there had not been any prior court order that the defendants answer the interrogatories and even though it appears that the scheduled trial date was going to be continued in any event. Compare Mattoon v. City of Pittsfield, 56 Mass. App. Ct. 124, 131-134 (2002) (continuance not deemed a “viable option”). Apart from these considerations, we recognize the understandable reluctance of trial judges effectively to rescind an order made by another judge, but conclude that the trial judge’s exercise of constraint may not have been warranted. It was not clear whether a “consultant” was synonymous with an expert. Moreover, only the testimony of a person who was consulted about the defendants’ counterclaims was excluded. As noted above, the judge at trial had no counterclaims before him, and the defendants sought to present Kurz’ testimony in response to the plaintiff’s claim for damages.
In any event, in the circumstances of this case, any error in the exclusion of Kurz’ testimony was harmless. The defendants submitted, as an offer of proof, Kurz1 “21-E Report” in an effort to show that his testimony “would have demonstrated that the property was environmentally contaminated, affecting its reasonable rental value.” The report does not, however, bear out this claim. In fact, it indicates that “there have been no reported releases of hazardous waste at the site,” and that the site “is not a registered hazardous waste generator.” While a high concentration of a particular hydrocarbon was detected which triggered a “reporting obligation,” “no remediation [was] necessary.” Thus, based on the offer of proof, Kurz’s testimony and his report would have had no impact on the trial judge’s findings. See Gidwani v. Wasserman, 373 Mass. 162, 168 (1977); Watertown Federal Savings & Loan Assn. v. Spanks, 346 Mass. 398, 400 (1963).
If Kurz is viewed as a percipient witness, the defendants fare no better. The fact is that the trial judge was willing to allow him to testily as a “fact” witness, stating “to the extent he had personal percipient knowledge of events, I see no reason why he can’t be called like any other witness.” The defendants elected not to call him. They also elected not to call any of the subcontractors who were present in court and who presumably would also have been able to testify as to their observations of any work done by the defendants.
The trial courts judgment is affirmed, but with directions to amend the award of damages to $38,500.57. Appeal dismissed.
So ordered.

 The amount stated in the judgment was $39,750.57. As we do the math, it appears that the trial judge failed to deduct the $1,250.00 for taxes even though he found that it was appropriate to do so.